Filed 2/11/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>

**THE PEOPLE,**

    **Plaintiff and Respondent,**

**v.**

**JAMES TIMOTHY McCARTHY,**

    **Defendant and Appellant.**

</td><td>

**A141144**

**(Alameda County<br>Super. Ct. No. 170220)**

</td></tr>
</table>

Penal Code section 1202.4, subdivision (f)[1] requires trial courts to order criminal defendants to make direct restitution to the victims of their crimes. Such direct victim restitution is generally limited to the economic losses victims suffer. However, section 1202.4, subdivision (f)(3)(F) (section 1202.4(f)(3)(F)) creates an exception to this general limitation and permits trial courts to order restitution for "[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288." In this case, appellant James Timothy McCarthy was convicted of numerous acts of child sexual abuse, including continuous sexual abuse of a child under section 288.5. He was not convicted of violating section 288. Over the objections of defense counsel, the trial court ordered McCarthy to make direct restitution to his victim, ruling that section 1202.4(f)(3)(F) is not limited to cases in which the defendant is convicted under section 288 but also authorizes restitution for noneconomic losses when a defendant is convicted under section 288.5.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV and V.

[1] All further undesignated statutory references are to the Penal Code.

1

McCarthy has appealed from the restitution order and argues the plain language of section 1202.4(f)(3)(F) requires a conviction under section 288 before restitution for noneconomic losses may be awarded. The People disagree and contend section 1202.4(f)(3)(F) permits restitution for noneconomic losses if a defendant's conduct violates section 288, even if the defendant is convicted of felony child abuse under a different section of the Penal Code, such as section 288.5.

In the published portion of our opinion, we address the scope of section 1202.4(f)(3)(F) and conclude it permits trial courts to order restitution for a victim's noneconomic losses where a defendant is convicted of continuous sexual abuse of a child under section 288.5 and the conduct underlying that conviction also constitutes a violation of section 288. In the unpublished portion of our opinion, we deal with McCarthy's other arguments.

FACTUAL AND PROCEDURAL BACKGROUND

Although this appeal concerns only the trial court's restitution order, a full understanding of the issues before us requires some explanation of the proceedings leading to McCarthy's conviction. We briefly summarize those proceedings before turning to the restitution hearing.[2]

*Charges, Trial, and Conviction*

On November 26, 2012, the Alameda County District Attorney filed an information charging McCarthy with14 offenses: count 1 alleged continuous sexual

___

[2] McCarthy has requested that we take judicial notice of our records in case number A138682, the prior appeal in which we affirmed his convictions. (*People v. McCarthy* (Apr. 16, 2015, A136682) [nonpub. opn.].) The People join in that request. We note the parties have not complied with the procedures of the California Rules of Court regarding requests for judicial notice. (Cal. Rules of Court, rule 8.252(a)(1) ["To obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion with a proposed order."].) We will nevertheless grant the request. (*People v. Vizcarra* (2015) 236 Cal.App.4th 422, 426, fn. 1 [in appeal from sentence, reviewing court took judicial notice of record in defendant's prior appeal from judgment of conviction], citing Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).) Our statement of the facts relating to the charges, trial, and sentencing is based on the record in the prior appeal.

abuse of a child (§ 288.5, subd. (a)); counts 2-12 alleged aggravated sexual assault of a child (§ 269, subds. (a)(4), (5)); count 13 alleged forcible oral copulation (§ 288a, subd. (c)(2)(A)); and count 14 alleged forcible rape (§ 261, subd. (a)(2)).

On February 5, 2013, trial proceedings began. During trial, the court granted the prosecutor's motion to dismiss count 2 of the information. On February 14, 2013, the parties made closing arguments, and the jury began deliberations. The following day the jury found McCarthy guilty of all the remaining counts.

On March 19, 2013, the trial court sentenced appellant to an aggregate term of 32 years plus 150 years to life. On May 16, 2013, McCarthy filed a notice of appeal in case number A138682. On April 16, 2015, we issued an opinion affirming McCarthy's convictions. (See fn. 2, *ante*.)

*The Restitution Hearing*

On December 9, 2013, the trial court held a restitution hearing. It awarded $7,366.50 to the Victim Compensation Board and $4,980 to the victim's mother. The trial court continued the matter to consider restitution for the victim, Jane Doe, and the victim's minor brother, E.[3]

The prosecutor argued the court should award noneconomic restitution to Jane Doe in the manner discussed in *People v. Smith* (2011) 198 Cal.App.4th 415 (*Smith*). Like this case, *Smith* involved acts of child molestation spanning many years. (*Id.* at p. 419.) The trial court in *Smith* based its award of restitution, in part, on awards for molestations in civil trials. (*Id*. at p. 432.) Following the lead of *Smith,* the prosecutor in this case submitted into evidence civil jury awards in a number of California cases arising from child molestation and sexual abuse. He discussed two cases from Alameda County and one from Contra Costa County. The prosecutor asked the trial court to award Jane $50,000 per year for 10 years for a total of $500,000.

Defense counsel argued that the only basis for awarding Jane noneconomic damages was section 1202.4(f)(3)(F). That provision authorizes restitution for

---

[3] E. requested $20,000. Defense counsel opposed E.'s request, and the trial court tentatively ruled against it. No further order regarding E.'s request appears in the record.

"[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288." According to defense counsel, the statute applies only to defendants convicted of violating section 288. Since McCarthy was not convicted under that section, the trial court had no jurisdiction to award noneconomic restitution.[4] In response, the prosecutor argued the Legislature had not intended section 1202.4(f)(3)(F) to apply only to defendants convicted of violating section 288. Instead, the prosecutor contended the statute applies in all child molestation cases in which the victim has suffered psychological harm.

The trial court observed "that the main argument by [defense] counsel is that there's no jurisdiction to order any kind of non-economic loss simply because of the way the statute is written." It continued the hearing until January 10, 2014, but it does not appear that hearing took place. Instead, the trial court issued a written order on February 14, 2014. In that order, the trial court stated, "The legal issue in this hearing is whether the victim is entitled to 'non-economic losses' under Penal Code Section 1202.4(f)(3)(F)?" "In applying the California Supreme Court's principles, including but [not] limited to, reading the words and giving them a common sense meaning, and in view of promoting rather that defeating the general purpose of the statute to avoid absurd consequences, this court feels that defendant is interpreting the statute too narrowly. It does not make common or legislative sense that this statute would only apply to a violation of Section 288. Here the defendant was convicted of a more aggravated sexual assault of a minor, that is 288.5. To then say that the statute applies only to the lesser offense, gives little meaning to the statute and results in an absurd consequence. Therefore, the court finds that a violation of Section 288.5 does come within the meaning of Section 1202.4(f)(3)(F)." The trial court then awarded the victim $100,000 per year for 10 years, for a total award of $1,000,000.

---

[4] Defense counsel also asked to preserve two objections for the record. Counsel contended McCarthy had a right to jury trial on restitution and also contended the award violated his client's right to equal protection. Counsel acknowledged both of those contentions had been rejected in *Smith*.

On February 26, 2014, McCarthy filed a notice of appeal from the restitution judgment.

DISCUSSION

Reprising the argument made by defense counsel below, McCarthy contends the trial court's award of restitution for noneconomic loss was statutorily unauthorized because he was not convicted of violating section 288. We will address this issue before turning to his other claims of error.

I. *The Statutory Scheme and the Parties' Contentions*

"In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights." (*People v. Giordano* (2007) 42 Cal.4th 644, 652 (*Giordano*).) The initiative added article I, section 28, subdivision (b) to the California Constitution.[5] (*Ibid.*) It declares that victims of crime are entitled to restitution and states, "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. [¶] . . . Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13)(A), (B).) Under this section, a " 'victim' " is "a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act." (Cal. Const., art. I, § 28, subd. (e).) The foregoing constitutional provision is not self-executing. (*Giordano, supra,* 42 Cal.4th at p. 652.) The Legislature has enacted a number of statutes to implement it, one of which is section 1202.4. (*Giordano, supra,* 42 Cal.4th at pp. 652, 656; *Smith, supra,* 198 Cal.App.4th at p. 431.)

---

[5] In November 2008, the voters of California adopted Proposition 9, popularly known as Marsy's Law, which amended article I, section 28 of the California Constitution. (*People v. Runyan* (2012) 54 Cal.4th 849, 858-859.) The current language is the result of that amendment.

With exceptions not relevant here, section 1202.4, subdivision (f) provides that in every case in which the victim of a crime suffers an economic loss, the trial court shall require the defendant to make restitution to the victim or victims.[6] It further provides that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . (F) Noneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288." (§ 1202.4(f)(3)(F).) Although section 1202.4, subdivision (f) provides for direct victim restitution "in every case" in which the victim of a crime suffers an economic loss, restitution orders are generally limited to the victim's economic damages. (*Smith, supra,* 198 Cal.App.4th at p. 431.)

McCarthy argues the trial court erred in imposing restitution under section 1202.4(f)(3)(F) because he was not convicted of violating section 288. He contends the language of section 1202.4(f)(3)(F) is unambiguous, and thus "the exception allowing for the award of noneconomic damages applies only to . . . section 288 violations. Because [he] was not convicted of that statute, the restitution is statutorily unauthorized and must be stricken."

The People respond by pointing out that section 1202.4(f)(3)(F) is "expansively worded" in that it permits restitution for noneconomic losses for "felony '*violations*' of section 288" rather than for " 'convictions.' " (§ 1202.4(f)(3)(F), italics added.) Thus, in their view, this section "applies to crimes prosecuted under other sections of the Penal Code which also qualify as violations of section 288." McCarthy was convicted of

---

[6] Section 1202.4, subdivision (f) states in relevant part: "Except as provided in subdivisions (q) and (r), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record."

continuous sexual abuse of a child under section 288.5, subdivision (a), and the People contend this conviction encompasses conduct that also violates section 288.[7] These arguments raise questions of statutory interpretation we review de novo. (*In re M.W.* (2008) 169 Cal.App.4th 1, 4.)

II.      *Principles of Statutory Construction*

In construing the statute, "our principal task is to ascertain the intent of the Legislature." (*In re M.W., supra,* 169 Cal.App.4th at p. 5 [construing restitution statute applicable to juvenile wardship cases].) The process of statutory interpretation may involve up to three steps. (*Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 892.) First, because the statutory language is generally the most reliable indicator of legislative intent, we look to the words themselves, giving them their ordinary meanings and construing them in context. (*People v. Robles* (2000) 23 Cal.4th 1106, 1111.) We do not consider statutory language in isolation "but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision[.]" (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040.) Although we must follow the statute's plain meaning if such meaning can be discerned, we will not do so if adherence to plain meaning "would lead to absurd results the Legislature could not have intended." (*Vigilant Ins. Co. v. Chiu* (2009) 175 Cal.App.4th 438, 444.) "In such circumstances,

---

[7] Section 288, subdivision (a) provides that: "any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

Section 288.5, subdivision (a) provides: "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years."

'[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071, quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

"If the plain language of the statute does not resolve the inquiry, as a second step we may turn to maxims of construction, ' "which serve as aids in the sense that they express familiar insights about conventional language usage." ' [Citations.]" (*People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1414.) We may also consider other extrinsic aids to statutory construction, including the statute's legislative history and the historical circumstances of its enactment. (*Ibid.*; see *People v. Robles, supra,* 23 Cal.4th at p. 1111 ["If . . . the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative intent."].) In addition, since we here construe a restitution statute, "we are guided by the broad constitutional mandate of article I, section 28, subdivision (b)." (*Giordano, supra,* 42 Cal.4th at p. 655.) " 'In keeping with the [voters'] "unequivocal intention" that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed.' [Citation.]" (*People v. Stanley* (2012) 54 Cal.4th 734, 737.)

Finally, "[t]o the extent that uncertainty remains in interpreting statutory language, 'consideration should be given to the consequences that will flow from a particular interpretation' [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 782.) In this final step, we " 'apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable [citations].' [Citation.]" (*Jurcoane v. Superior Court, supra,* 93 Cal.App.4th at p. 893.)

III.     *Section 1202.4(f)(3)(F) Permits Victims to Receive Restitution for Noneconomic Losses Where the Defendant's Conduct Violates Section 288, Even if the Defendant Is Convicted Under Section 288.5.*

To resolve the parties' conflicting interpretations of section 1202.4(f)(3)(F), we apply the foregoing principles of statutory construction to the case before us. As we explain, while the plain language of section 1202.4(f)(3)(F) is susceptible to more than one interpretation, the text of the entire statute and its legislative history lead us to

8

conclude the Legislature intended to authorize courts to impose restitution orders for a victim's noneconomic losses where the defendant's conduct constitutes a violation of section 288, even if the defendant is convicted of continuous sexual abuse of a child under section 288.5.  Furthermore, an interpretation limiting restitution orders to defendants convicted of violating section 288, but not continuous sexual abuse of a child, would lead to a result the Legislature could not have intended.

A.    *The Statute's Plain Language Does Not Resolve the Interpretive Question.*

In the first step, we must determine whether the plain language of section 1202.4(f)(3)(F) resolves the interpretive inquiry.  (See *People v. Verduzco, supra,* 210 Cal.App.4th at p. 1414.)  We conclude it does not.  On its face, section 1202.4(f)(3)(F) is susceptible to more than one reasonable construction. McCarthy contends the statute permits restitution for noneconomic losses only in cases in which the defendant has been convicted of violating section 288, because only that section is mentioned in section 1202.4(f)(3)(F).  In contrast, the People argue the statute's language does not require a conviction under section 288, but only a violation of that statute.  Neither interpretation is implausible, and thus we may look beyond the bare language of the statute to ascertain its meaning.  (*People v. Robles, supra,* 23 Cal.4th at p. 1111.)  As the People ask us to examine other indicia of legislative intent, we now consider their contentions.

B.    *Analysis of the Statute's Text and History Indicate the Legislature Intended to Make Restitution for Noneconomic Losses More Widely Available to Victims of Child Sexual Abuse.*

In seeking a broader construction of the statute, the People make two basic arguments, one based on the text of the statute and the other on its history.  As to the text, they observe that in section 1202.4, the Legislature separately uses the terms "violations" (§ 1202.4(f)(3)(F)), "conviction" (§ 1202.4, subd. (q)), and "convicted" (§ 1202.4, subds. (a)(1), (2), (b)(1), (2)).  From this, the People contend we should infer the Legislature intended these terms to have different meanings.  This argument has considerable force, because the Legislature's use of different words in adjoining

9

subdivisions of statute ordinarily creates a compelling inference that different meaning was intended. (See, e.g., *People v. Albillar* (2010) 51 Cal.4th 47, 56.) In keeping with this rule of statutory construction, one California case interpreting similar language distinguished the phrase " 'violations of law' " from the phrase " 'arrests or convictions.' " (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 666.) It concluded the former phrase encompasses a broader range of conduct than the latter. (*Ibid.*)

Turning to the history of the statute, the People note that in 1994, the Legislature amended section 1202.4 to add noneconomic restitution for section 288 convictions. Former section 1202.4, subdivision (i) provided in relevant part: "If the *conviction* is for felony violation of Section 288, restitution may be ordered pursuant to subdivision (f) . . . and the court may order that the restitution be paid to the victim to cover noneconomic losses, including, but not limited to, psychological harm." (Stats. 1994, ch. 1106, § 3, p. 6550, italics added.) When the statute was revised in 1995, this language was carried forward. (See Stats. 1995, ch. 313, § 5, p. 1757.) In 1996, however, the Legislature removed the word "conviction" from this subdivision and amended the statute to authorize the court to award restitution for "[n]oneconomic losses, including, but not limited to, psychological harm, for felony *violations* of Section 288." (Former section 1202.4, subd. (f)(3)(E), Stats. 1996, ch. 629, § 3, p. 3467, italics added.) According to the People, this change made it clearer the statute applied to violations of section 288 "whether the defendant was convicted of that crime or a greater included offense."

The amendment on which the People rely was part of Senate Bill No. 1685 of 1996. As initially proposed, the relevant section of the bill contained language almost identical to the prior version of the statute.[8] The removal of the word "conviction"

---

[8] As introduced on February 21, 1996, the relevant provision of the proposed bill would have added only the word "a" to former section 1202.4, subdivision (i): "If the conviction is for *a* felony violation of Section 288, restitution may be ordered pursuant to subdivision (f) regardless of whether or not the defendant is denied probation and the court may order that the restitution be paid to the victim to cover noneconomic losses,

10

occurred as a result of an Assembly amendment to the Senate bill. (Assem. Amend. to Sen. Bill No. 1685 (1995-1996 Reg. Sess.) June 27, 1996, 5 Assem. J. (1995-1996 Reg. Sess.) p. 7630.) That amendment placed the language of what is now section 1202.4(f)(3)(F) into former subdivision (f)(3)(E) of section 1202.4, and this revised version was eventually enacted into law. (See Stats. 1996, ch. 629, § 3, p. 3467.)

We have found no explanation for this specific change in the committee reports and analyses of Senate Bill No. 1685. Nevertheless, several rules of statutory construction lead us to conclude it had the effect the People ascribe to it. First, in interpreting the statute we must ordinarily presume the Legislature made a conscious choice to remove the word "conviction" from this subdivision of section 1202.4. (*People v. Toloy* (2015) 239 Cal.App.4th 1116, 1121 [" 'Changes in wording and phraseology are presumed to have been deliberately made.' [Citation.]"].) Second, "every word excluded from a statute must be presumed to have been excluded for a purpose." (*Employment Development Dept. v. California Unemployment Ins. Appeals Bd.* (2010) 190 Cal.App.4th 178, 193.) Third, it is clear the deletion of particular terms can effect a substantive change in the meaning of a statute. (E.g., *In re Marriage of Duffy* (2001) 91 Cal.App.4th 923, 939-940.) Thus, by deleting the word "conviction" the Legislature presumably intended to remove any requirement that defendants actually be convicted of a charge under section 288 before restitution for noneconomic losses could be awarded.

Furthermore, as the People point out, the overall history of the amendments to section 1202.4 reflects a legislative intent to enlarge, not restrict, the availability of restitution. The California Supreme Court has specifically remarked that the 1996 amendments generally expanded the categories of loss for which restitution was available.[9] (*Giordano, supra,* 42 Cal.4th at p. 654.) Such an interpretation comports with

including, but not limited to, psychological harm." (Sen. Bill No. 1685 (1995-1996 Reg. Sess.) § 2.)

[9] Although *Giordano* stated in passing that restitution for noneconomic losses is limited to "orders relating to felony *convictions* for lewd or lascivious acts" (*Giordano, supra,* 42 Cal.4th at p. 656, italics added), that case was concerned with other issues and did not purport to define the scope of section 1202.4(f)(3)(F). " 'An appellate decision is not

11

the broad and liberal construction courts have given to the restitution statutes so as to effectuate the voters' intention that victim restitution be made. (*People v. Stanley, supra,* 54 Cal.4th at p. 737.) The legislative history therefore indicates that a conviction under section 288 is not a prerequisite to an award of restitution for noneconomic losses.

> C. *McCarthy's Proposed Construction Would Lead to an Absurd Result.*

We also agree with the People that McCarthy's proposed construction of the statute would lead to an absurd result. McCarthy argued below that the prosecution had made a choice between charging him under section 288, a charge that carried the possibility of obtaining victim restitution, or charging him with "a much more serious violation" "at their cost to ask for restitution for psychological harm at the end."

McCarthy offers no rationale for why the Legislature would have wanted prosecutors to choose between restitution and greater punishment. Perhaps more significantly, McCarthy fails to explain why the Legislature would have chosen to grant restitution to victims of lewd and lascivious acts (§ 288) while simultaneously denying it to victims of continuous sexual abuse (§ 288.5). It is well recognized that " 'child sexual abuse results in long-term emotional and psychological damage to the child victim if left untreated.' " (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1315, fn. 6, quoting Stats. 1992, ch. 1008, § 1, p. 4705.) And such abuse "is not the kind of act that results in emotional and psychological harm only occasionally." (*J.C. Penny Casualty Ins. Co. v. M.K.* (1991) 52 Cal.3d 1009, 1026.) Why would the Legislature have chosen to permit restitution for the psychological harm caused by lewd and lascivious acts but not for the psychological harm caused by the very same conduct when charged as continuous child sexual abuse? (§ 1202.4(f)(3)(F) [noneconomic losses specifically include "psychological harm"].) McCarthy offers no answer to this question.

In construing the statute, we must consider the consequences flowing from a given interpretation. (*People v. Cruz, supra,* 13 Cal.4th at p. 782.) Having considered those

---

authority for everything said in the court's opinion but only "for the points actually involved and actually decided." ' [Citation.]" (*People v. Knoller* (2007) 41 Cal.4th 139, 155.)

12

consequences, we refuse to adopt a construction that would grant restitution for noneconomic loss to victims of lewd and lascivious acts but not to victims of what McCarthy agrees are "much more serious" violations of the Penal Code. "We can think of no explanation why the Legislature could have desired such an unlikely result, and [McCarthy] advances none."[10] (*People v. Broussard, supra,* 5 Cal.4th at p. 1077.)

We therefore hold that where, as here, a defendant is convicted of acts of continuous sexual abuse of a child under section 288.5, the trial court may award the victim restitution for noneconomic losses if the conduct of which the defendant was convicted also constitutes a violation of section 288, even if the defendant was not convicted under the latter section.

D.     *McCarthy's Conduct Violated Section 288.*

The remaining question is whether McCarthy's conduct violated section 288. Based on the record before us, we have no trouble concluding it did. McCarthy was charged in count 1 with violating section 288.5, subdivision (a) by engaging "in three [or] more acts of 'substantial sexual conduct', as defined in . . . 1203.066(b), *and* three [or] more acts in violation of Section 288[.]" (Italics added.) The information therefore made

---

[10] We find support for our conclusion in *People v. Adames* (1997) 54 Cal.App.4th 198 (*Adames*). That case addressed a similar issue under section 1202.1, a statute mandating AIDS testing for defendants convicted of crimes listed in subdivision (e) of the statute. The defendant in that case was charged with and convicted of continuous sexual abuse of a child under section 288.5, which was not listed in section 1202.1, subdivision (e), although section 288 was a listed offense. (*Adames, supra,* 54 Cal.App.4th at p. 213.) The court considered whether AIDS testing could be ordered only when a defendant was convicted of a listed offense or whether testing could be ordered if the conduct of which the defendant was convicted encompassed a listed offense. (*Ibid.*) The court concluded that an "interpretation that restricts AIDS testing only to convictions under section 288 leads to a patently absurd result. Logically, the Legislature did not intend to require AIDS testing where a defendant violated section 288 under some circumstances, e.g., where he was charged with a violation of and convicted under section 288, but not under other circumstances, e.g., where he was convicted of section 288.5 based on multiple violations of section 288. We therefore adopt the . . . interpretation requiring the AIDS testing mandate of section 1202.1 to apply to a conviction which necessarily encompasses a violation of section 288. [Citation.]" (*Adames, supra,* 54 Cal.App.4th at p. 213.)

clear that the offense charged in that count was based on conduct that violated section 288. Moreover, in closing argument, the prosecutor made it even clearer count 1 involved acts that violated section 288. He explained to the jury that to convict on this count, "[y]ou are going to have to find that [McCarthy] committed a lewd act." After telling the jury McCarthy had engaged in three or more acts of lewd and lascivious conduct, the prosecutor defined such conduct as "the wilful touching of a child accomplished with the intent to sexually arouse him." The instructions also told the jury that to prove McCarthy was guilty of the section 288.5 charge, "the People must prove that; [¶] . . . The defendant engaged in three or more acts of lewd or lascivious conduct with the child[.]"

We recognize that not all violations of section 288.5 will encompass violations of section 288. Section 288 requires the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the defendant or of the child, whereas a conviction for violating section 288.5 could be based upon a course of substantial sexual conduct within the meaning of section 1203.066, subdivision (b), which requires no specific intent. (*People v. Avina* (1993) 14 Cal.App.4th 1303, 1313 (opn. by Werdegar, J.).) Here, however, the charging document, the prosecutor's closing argument, and the instructions all explained that the section 288.5 charge was based on McCarthy's commission of lewd and lascivious acts. Furthermore, the evidence at trial, including McCarthy's own testimony, showed the element of sexual arousal or gratification was present. McCarthy conceded he had been sexually aroused during an admitted sexual contact with the victim. And in closing argument, the prosecutor repeatedly mentioned that McCarthy was sexually attracted to the victim and had become aroused during their encounters. In these circumstances, it is inconceivable that the jury could have found McCarthy guilty of violating section 288.5 without also finding he possessed the specific "intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of" himself or the victim. (§ 288, subd. (a).) As the conduct underlying McCarthy's conviction for continuous sexual abuse of a child under section 288.5 encompassed a

14

violation of section 288, the trial court was statutorily authorized to award restitution for the victim's noneconomic losses.

E. *People v. Valenti*

On January 21, 2016, the Attorney General informed us of the recent opinion by Division Three of the Second District in *People v. Valenti* (Jan. 14, 2016, B255727) ___ Cal.Rptr.3d ___ [2016 WL 191991] (*Valenti*). (See Cal. Rules of Court, rule 8.254.) We have examined that case and find it distinguishable from the one before us.

The defendant in *Valenti* was convicted of continuous sexual abuse, lewd acts on a child, child molestation, and other offenses, all relating to his sexual abuse of 15 different children over a period of 30 years. (*Valenti, supra,* 2016 WL 191991, at p. *1.) Insofar as is relevant here, he was charged and convicted under section 288.5 of continuous sexual abuse of five minors. (*Id.* at pp. *1-2.) The information alleged the defendant's section 288.5 offenses "involved substantial sexual conduct with a child younger than 14 (§1203.066, subd. (a)(8))[.]" (*Id.,* 2016 WL 191991, at p. *2.) After the jury convicted the defendant on all counts, the trial court awarded restitution for noneconomic damages in the amount of $450,000. (*Ibid.*) The award included restitution to the five minors who were victims of the defendant's continuous sexual abuse (§ 288.5, subd. (a)). (*Id.* at p. *21.)

On appeal, Valenti argued that "as to the section 288.5 counts, noneconomic restitution is not authorized by statute." (*Valenti, supra,* 2016 WL 191991, at p. *21.) Significantly, in contrast to the case before us, in *Valenti* the People *conceded* section 1202.4(f)(3)(F) did not authorize noneconomic damage awards to the section 288.5 victims. (*Id.,* at pp. *21, 22.) Apparently accepting that concession, the *Valenti* court agreed with the defendant, holding, "The plain language of section 1202.4, subdivision (f)(3)(F) limits noneconomic restitution awards to 'felony violations of Section 288.' It does not include section 288.5." (*Id.,* at p. *22.) The court noted sections 288 and 288.5 are not interchangeable. (*Ibid.*) Because the defendant had been charged and convicted of continuous sexual abuse under section 288.5, rather than of

15

lewd or lascivious acts under section 288, the court reversed the awards of noneconomic restitution to the five minor victims.  (*Ibid*.)

*Valenti* is distinguishable from the present case on both legal and factual grounds. Perhaps most importantly, in *Valenti* the People conceded the trial court had erred in awarding noneconomic restitution to the victims of continuous sexual abuse under section 288.5.  (*Valenti, supra,* 2016 WL 191991, at pp. *21, 22.)  Since the People did not dispute the defendant's argument on this issue, the *Valenti* court had no occasion to consider the statutory construction argument the People make here.  Opinions are not authority for propositions not considered.  (E.g., *People v. Knoller*, *supra*, 41 Cal.4th at p. 155.)  *Valenti* simply does not address the issue before us.

Moreover, the facts of the underlying cases are significantly different.  Unlike the defendant in *Valenti,* McCarthy was convicted of continuous sexual abuse of a child based not on "three or more acts of substantial sexual conduct . . . as defined in subdivision (b) of Section 1203.066," but rather based on "three or more acts of lewd or lascivious conduct, as defined in Section 288[.]"  (§ 288.5(a).)  As we explained more fully above, unlike the defendant in *Valenti,* McCarthy's section 288.5 conviction was therefore based on the jury's finding that he had engaged in conduct that violated section 288.  Thus, in this case, the jury actually determined McCarthy had violated section 288, even though he was not convicted under that section.

In short, *Valenti* did not address the question of statutory construction the People have raised here, because in that case the People conceded noneconomic restitution was not authorized by statute.  *Valenti* is also distinguishable on its facts.  For these reasons, it does not alter our conclusion regarding the proper interpretation of section 1202.4(f)(3)(F).

IV.     *McCarthy Had No Right to Jury Trial or to Proof Beyond a Reasonable Doubt on the Issue of Restitution.*

McCarthy next contends the imposition of a restitution fine based on facts determined by the trial judge violated his Sixth Amendment right to jury trial.  Citing *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), *Blakely v. Washington* (2004)

542 U.S. 296 (*Blakely*), and *Southern Union Co. v. U.S.* (2012) 567 U.S. ___, ___ [132 S.Ct. 2344] (*Southern Union*), he argues defendants have a right to have a jury "determine beyond a reasonable doubt all facts, other than a prior conviction, that increase a criminal defendant's maximum sentence."[11] McCarthy acknowledges *Apprendi* does not apply to restitution for economic losses, but he asserts that restitution for *noneconomic* losses under section 1202.4, subdivision (f)(3)(F) violates the rule in that case because it constitutes punishment above the statutory maximum based on facts not found true by a jury beyond a reasonable doubt. According to McCarthy, the statutory maximum under section 1202.4 is full restitution for the victim's economic losses.

    A.    *Direct Victim Restitution Is Not Criminal Punishment.*

The primary purpose of restitution is to compensate the victim for the losses caused by the defendant's criminal acts. (E.g., *People v. Millard* (2009) 175 Cal.App.4th 7, 35 (*Millard*).) Accordingly, California decisions hold that "direct victim restitution is not a criminal penalty." (*People v. Pangan* (2013) 213 Cal.App.4th 574, 585 (*Pangan*); accord *People v. Foalima* (2015) 239 Cal.App.4th 1376, 1398 (*Foalima*); *People v. Wasbotten* (2014) 225 Cal.App.4th 306, 309; *People v. Harvest* (2000) 84 Cal.App.4th 641, 649 (*Harvest*) ["the Legislature intended victim restitution as a civil remedy rather than as a criminal punishment"].) Since restitution does not increase punishment for the

---

[11] In *Apprendi,* the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490.) Later in *Blakely,* the federal high court explained "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (*Blakely, supra,* 542 U.S. at p. 303.) *Southern Union* involved a restitution fine of $50,000 per day for each day on which the defendant had violated an environmental law. (*Southern Union, supra,* 132 S.Ct. at p. 2349.) The court held that the rule of *Apprendi* applies to criminal fines, and it struck down the fine at issue because the fact that determined the amount of the fine—the number of days on which the violation occurred—was found by the district judge and not the jury. (*Id.* at pp. 2356-2357.)

crime, a defendant has no Sixth Amendment right to jury trial at a restitution hearing or to proof beyond a reasonable doubt. (*Pangan, supra,* 213 Cal.App.4th at pp. 585-586; *Smith, supra,* 198 Cal.App.4th at p. 433; *Millard, supra,* 175 Cal.App.4th at pp. 35-36; see also *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1184 [collecting federal cases].)

McCarthy would distinguish the foregoing cases on the ground that—save for *Smith*—they involved restitution for economic losses only. He argues California cases have concluded that restitution for economic losses is not punishment because it is limited to reimbursement for "actual and demonstrated economic loss[.]" (*Harvest, supra,* 84 Cal.App.4th at p. 650.) But as *Smith* explained, "there is no basis for distinguishing jury trial rights, or lack thereof, for restitution orders for economic damages and restitution orders for noneconomic damages. In both cases, the trial court is performing a task that, in a civil case, a jury would perform."[12] (*Smith, supra,* 198 Cal.App.4th at p. 433.)

---

[12] McCarthy suggests *Smith's* reasoning on this point is flawed because noneconomic damages are "subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium[.]" (Civ. Code, § 1431.2, subd. (b)(2).) In contrast, economic damages are "objectively verifiable monetary losses including, medical expenses, loss of earnings[.]" (Civ. Code, § 1431.2, subd. (b)(1).) McCarthy argues, "It does not follow from the fact that a criminal court may, consistent with the California Constitution, order restitution for economic damages, that it may therefore also order restitution for noneconomic damages." Of course, section 1202.4(f)(3)(F) specifically authorizes courts to award restitution for noneconomic losses in appropriate cases. And it is difficult to see how this can be inconsistent with the California Constitution, which mandates that restitution "be ordered from the convicted wrongdoer *in every case* . . . in which a crime victim suffers *a loss*." (Cal. Const., art. I, § 28, subd. (b)(13)(B), italics added; see also *id*., subd. (b)(13)(A) ["all persons who suffer *losses* as a result of criminal activity shall have the right to seek and secure restitution . . . ." (italics added)].) The cited constitutional provisions do not distinguish between economic and noneconomic losses. As *Giordano* notes, the limitation of restitution to economic losses is not expressly included in the California Constitution. (*Giordano, supra,* 42 Cal.4th at p. 656.)

B. *McCarthy's Claims that Restitution Constitutes Punishment Are Unpersuasive.*

Despite the cases cited in the preceding section, McCarthy claims awarding restitution for noneconomic losses under section 1202.4(f)(3)(F) is punitive. He offers a number of reasons, but we find none of them persuasive.

First, McCarthy contends section 1202.4(f)(3)(F) is punitive because it applies only to defendants who have violated section 288. He sees no reason other than punishment to make only those defendants subject to restitution for noneconomic damages in their criminal proceedings, where they enjoy fewer constitutional protections. To the extent this argument differs from McCarthy's equal protection claim (see part V, *post*), we find it meritless. The purpose of the restitution provided for in section 1202.4(f)(3)(F) is the same as that of all victim restitution—to provide monetary compensation to "all persons who suffer losses as a result of criminal activity[.]" (Cal. Const., art. I, § 28, subd. (b)(13)(A).) Those losses include "physical, psychological, or financial harm" resulting from criminal acts. (Cal. Const., art. I, § 28, subd. (e).) Regardless of the nature of the loss for which restitution is made, the statute's purpose is "to allow the People to prosecute an expedited hearing before a trial court to provide a victim with a civil remedy for . . . losses suffered[.]" (*Millard, supra,* 175 Cal.App.4th at p. 35.) Thus, "direct victim restitution is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits." (*Pangan, supra,* 213 Cal.App.4th at p. 585.)

Second, McCarthy contends restitution for noneconomic loss is punitive because it is not limited to a specific sum. He argues noneconomic restitution can easily become excessive because there are no "built-in limits." We cannot agree. As just noted, the purpose remains compensation for the victim's loss, not punishment of the defendant. (*Millard, supra,* 175 Cal.App.4th at p. 35.) Neither the difficulty in calculating the amount of the victim's noneconomic loss nor the subjective nature of the calculation transforms a restitution order into punishment. Restitution hearings for economic loss often involve complicated calculations and the presentation of additional evidence.

19

(*Giordano, supra,* 42 Cal.4th at p. 661 [several categories of loss under statute require complicated calculations; complexity of calculating spouse's loss of support "does not materially distinguish it from the categories of loss specified by the Legislature"]; *People v. Chappelone, supra,* 183 Cal.App.4th at p. 1175 ["courts are often confronted with restitution situations that require 'complicated calculations' "].)  McCarthy cites no authority holding that the difficulty involved in calculating a victim's noneconomic loss makes restitution for such losses a form of criminal punishment.

Third, McCarthy claims restitution for psychological harm can involve substantial sums of money.[13]  He argues the $1 million awarded here is an amount so large as to be punitive, because it "involve[s] significant infringements on the defendant['s] freedom as well as an 'affirmative disability and restraint.' "  He relies on *Southern Union, supra,* 132 S.Ct. 2344, but that case is inapposite.  *Southern Union* concerned "the imposition of criminal fines" (*id*. at p. 2357), whereas victim restitution under section 1202.4 is *not* a criminal fine.  (*People v. Sweeney* (2014) 228 Cal.App.4th 142, 155; see also § 1202.4, subd. (a)(3) [providing for *both* restitution fines and restitution to victims].)  Thus, *Southern Union* has no application to direct victim restitution.  (*Pangan, supra,* 213 Cal.App.4th at p. 585; accord, *Foalima, supra,* 239 Cal.App.4th at p. 1398.)

Finally, McCarthy argues that any award for noneconomic loss exceeds the "statutory maximum" set by section 1202.4.  He contends the statutory maximum is "full restitution for the victim's *economic* losses."  (Italics added.)  He notes that section 1202.4 refers specifically to "economic loss."  (See § 1202.4, subds. (a)(1), (f), (f)(3).)  McCarthy's argument is at odds with California case law, which holds that section 1202.4 carries "no prescribed statutory maximum."  (*Pangan, supra,* 213

---

[13] McCarthy complains that section 1202.4(f)(3)(F) expands the definition of victim loss and permits restitution beyond that which would exceed the damages available to the victim in a separate civil suit against the defendant.  The only authority he cites, however, is the dissenting opinion of Justice Poché in *Harvest, supra,* 84 Cal.App.4th at page 656.  Even if we assume the truth of this assertion, McCarthy does not clearly explain how it supports his argument.  In any event, "dissenting opinions are not binding precedent[.]" (*People v. Lopez* (2012) 55 Cal.4th 569, 585.)

Cal.App.4th at p. 585.) Moreover, we fail to see how restitution for noneconomic losses can exceed the statutory maximum when the statute itself explicitly provides for restitution of such losses. (§ 1202.4, subd. (f)(3)(F).)

V.      *Section 1202.4(f)(3)(F) Does Not Violate Equal Protection.*

McCarthy's final contention is that section 1202.4(f)(3)(F) violates his right to equal protection under the federal and state Constitutions. Specifically, he argues section 1202.4, subdivision (f)(3)(F) violates equal protection because "[t]here is no rational justification for singling out only defendants who sustain section 288 convictions or only the child victims of the underlying statutes in this case, and denying them the right to a jury trial on noneconomic losses, while allowing other defendants convicted of other sex crimes such as rape, penetration, and sodomy against children or against adults to have claims of noneconomic damages litigated in the civil courts by juries." We disagree.

"When an equal protection case does not involve a suspect classification such as race and does not infringe on a fundamental right, the legislative classification will be upheld whenever it has a rational relationship to a legitimate state interest." (*People v. Parker* (2006) 141 Cal.App.4th 1297, 1309.) *Smith* held that section 1202.4(f)(3)(F) serves a legitimate public interest: "Enacted as part of a broader effort to protect child victims of sexual abuse [citation], the noneconomic loss provision of section 1202.4 does just that—helps to protect child victims of sexual abuse . . . by compensating those victims for psychological harm. Differentiating between child victims and other victims is rational based on the vulnerability of children in general and society's interest in protecting children." (*Smith, supra,* 198 Cal.App.4th at p. 435.) Thus, the Legislature could reasonably have drawn a distinction between child victims of sexual offenses and adult victims of similar offenses.

In claiming that section 1202.4(f)(3)(F) serves no rational purpose, McCarthy points out that the noneconomic loss provision of section 1202.4 does not apply to all sex crimes involving child victims. That does not render the provision arbitrary or irrational. "When conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not

21

arbitrary or irrational simply because there is an 'imperfect fit between means and ends.' [Citation.]" (*People v. Turnage* (2012) 55 Cal.4th 62, 77.)  We conclude section 1202.4(f)(3)(F) does not violate equal protection.  (See *Smith, supra,* 198 Cal.App.4th at p. 435.)

DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.

22

A141144

Superior Court of the County of Alameda, No. 170220, Vernon Nakahara, Judge.

Linda M. Leavitt, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, René A. Chacón, Supervising Deputy Attorney General, David M. Baskind, Deputy Attorney General for Plaintiff and Respondent.

A141144