[No. D068746. Fourth Dist., Div. One. Feb. 8, 2017.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE VILLAREAL MARTINEZ, Defendant and Appellant.

**300**

COUNSEL

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McCONNELL, P. J.—

I

INTRODUCTION

A jury convicted Jose Villareal Martinez of continuous sexual abuse of a child under the age of 14 (Pen. Code,[1] § 288.5, subd. (a); count 1).[2] The court sentenced him to 12 years in prison. The court separately ordered him to pay the victim $150,000 in restitution for noneconomic damages (noneconomic restitution).

Martinez appeals, contending we must reverse his conviction because the court prejudicially erred by failing to suppress his statements to police, by admitting the recorded forensic interviews of the victim, and by declining to give the jury his entire proposed special jury instruction on innocuous touching. He further contends we must reverse the restitution order because the court lacked statutory authority to award the victim noneconomic restitution.

In the published portion of the opinion we follow *People v. McCarthy* (2016) 244 Cal.App.4th 1096 [198 Cal.Rptr.3d 741] (*McCarthy*) and hold the court did not err in awarding the victim noneconomic restitution because section 1202.4, subdivision (f)(3)(F) (§ 1202.4(f)(3)(F)) authorizes such an award against a defendant convicted of violating section 288.5 if the conduct underlying the conviction also constitutes a violation of section 288.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

[2] The prosecution had alternatively charged Martinez with five counts of committing a forcible lewd act upon a child (§ 288, subd. (b)(1); counts 2–6). The court dismissed these charges in light of the jury's verdict on count 1.

(*McCarthy, supra*, at p. 1109.) In the remaining portions of the opinion we explain why we are unpersuaded by Martinez's other contentions and, consequently, we affirm the judgment.

## II

## BACKGROUND[3]

The victim lived with Martinez and his wife. Many times when his wife was occupied or at work, Martinez took the victim to his room and had her lie on his bed with him. He then pulled down her clothes, put his penis on her buttocks and moved his penis up and down for about five to 10 minutes. Each time he told her not to tell anyone.

In addition, many times when Martinez and the victim were shopping together, Martinez would condition purchases for her on her giving him "a little leg." After he bought her something and they were in his car or a borrowed truck, he would drive slowly and use his hand to touch her chest and buttocks area under her clothes. He would also touch her legs and pelvic area, including her vagina, over her clothes. Each time he told her not to tell anyone.

However, the victim eventually told Martinez's wife about Martinez's conduct and Martinez's wife told the victim's mother about it. Martinez's wife also reported Martinez's conduct to police.

A social worker interviewed the victim three times. The second interview was two weeks after the first and the third interview was two months after the second. In the first interview, the victim only told the social worker about the conduct in the vehicles. In the second interview, the victim told the social worker about the conduct in Martinez's bedroom. The victim delayed telling her mother, Martinez's wife or the social worker about the conduct in Martinez's bedroom because Martinez had told her not to tell anyone and she was afraid of what he might do to her.

The social worker testified child sexual abuse victims commonly do not disclose everything during the initial interview. An expert in conducting forensic interviews of child sexual abuse victims similarly testified delayed disclosure of childhood sexual abuse is normal, not exceptional. The expert also testified incremental disclosure of childhood sexual abuse is not unusual.

---

[3] To preserve the confidentiality of the victim's identity our summary omits some factual details which, while superficially relevant to the issues raised on appeal, are not essential to our decision.

At the behest of a police investigator, the victim and her mother made a pretext phone call to Martinez. During the call, which became emotional, the victim told Martinez she did not like what happened to her in the vehicles and in Martinez's bed. Martinez apologized for the conduct.

## III

## DISCUSSION

### A–C*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D

### 1

At the sentencing hearing, the court noted there had been no request for economic restitution, but section 1202.4(f)(3)(F) allowed the court to award noneconomic restitution to victims of section 288 offenses. The court stated it believed the victim would require counseling in the future and "it's the constitutional right of the victim to be compensated for that under the statute." The court tentatively decided to award the victim $150,000, subject to a hearing and briefing by the parties.

In subsequent briefing, Martinez argued the availability of noneconomic restitution under section 1202.4(f)(3)(F) is limited to convictions under section 288 and does not apply to convictions under section 288.5. The prosecution argued the statute applied to all felony convictions for child molestation. After considering these arguments, the court confirmed its tentative decision and awarded the victim noneconomic restitution of $150,000.

### 2

With exceptions not applicable here, section 1202.4, subdivision (f), provides in part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim . . . in an amount established by court order, based on the amount of loss claimed by the victim . . . or any other showing to the court. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order shall be . . . of a dollar amount that is sufficient to fully

---

*See footnote, *ante*, page 298.

reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (F) Noneconomic losses, including, but not limited to, psychological harm, *for felony violations of Section 288*." (Italics added.)

Martinez contends we must reverse the restitution order because, according to its plain language, section 1202.4(f)(3)(F) only authorizes noneconomic restitution for violations of section 288. It does not authorize noneconomic restitution for violations of section 288.5.

### 3

We review questions of statutory interpretation de novo. (*McCarthy*, *supra*, 244 Cal.App.4th at pp. 1103–1104.) "In construing the statute, 'our principal task is to ascertain the intent of the Legislature.' [Citation.] The process of statutory interpretation may involve up to three steps. [Citation.] First, because the statutory language is generally the most reliable indicator of legislative intent, we look to the words themselves, giving them their ordinary meanings and construing them in context. [Citation.] We do not consider statutory language in isolation 'but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision.' [Citation.] Although we must follow the statute's plain meaning if such meaning can be discerned, we will not do so if adherence to plain meaning 'would lead to absurd results the Legislature could not have intended.' [Citation.] 'In such circumstances, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' [Citation.]

" 'If the plain language of the statute does not resolve the inquiry, as a second step we may turn to maxims of construction, " 'which serve as aids in the sense that they express familiar insights about conventional language usage.' " [Citations.]' [Citation.] We may also consider other extrinsic aids to statutory construction, including the statute's legislative history and the historical circumstances of its enactment. [Citations.] In addition, since we here construe a restitution statute, 'we are guided by the broad constitutional mandate of California Constitution, article I, section 28, subdivision (b).' [Citation.] ' "In keeping with the [voters'] 'unequivocal intention' that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed." [Citations.]' [Citation.]

"Finally, '[t]o the extent that uncertainty remains in interpreting statutory language, "consideration should be given to the consequences that will flow from a particular interpretation" [citation] . . . .' [Citation.] In this final step, we ' "apply reason, practicality, and common sense to the language at hand.

If possible, the words should be interpreted to make them workable and reasonable [citations]." ' " (*McCarthy, supra,* 244 Cal.App.4th at pp. 1104–1105.)

4

a

Two appellate courts have recently considered and reached differing conclusions on whether section 1202.4(f)(3)(F) applies to convictions under section 288.5. In the first case, *People v. Valenti* (2016) 243 Cal.App.4th 1140 [197 Cal.Rptr.3d 317] (*Valenti*), the People conceded victims of the crime of continuous sexual abuse under section 288.5 are not eligible for noneconomic restitution under section 1202.4(f)(3)(F). (*Valenti, supra,* at p. 1181.) The appellate court agreed, concluding "[t]he plain language of section 1202.4[(f)(3)(F)] limits noneconomic restitution awards to 'felony violations of Section 288.' It does not include section 288.5. . . . 'Sections 288 and 288.5 are not . . . interchangeable statutes.' [Citations.] Therefore, contrary to the prosecutor's representations below, the court was *not* 'allowed to award restitution to victims in [section] 288[-]*type* cases.' 'It is not our job to insert language in a statute which is not there. Had the Legislature wanted to include section 288.5' in the restitution statute, 'it was capable of doing so. It did not. The People's remedy lies with the Legislature and that body's power to amend the law, not with us, because we are charged with enforcing statutes as they are written,' not as the prosecutor wishes they were written." (*Id.* at pp. 1181–1182.)

b

■ A month later, in *McCarthy, supra,* 244 Cal.App.4th 1096, another appellate court concluded section 1202.4(f)(3)(F) applies to convictions for continuous sexual abuse of a child under section 288.5 "if the conduct of which the defendant was convicted also constitutes a violation of section 288, even if the defendant was not convicted under [section 288]." (*McCarthy,* at p. 1109.)

In reaching this conclusion, the *McCarthy* court first determined the plain language of section 1202.4(f)(3)(F) is reasonably susceptible to an interpretation either limiting it to convictions under section 288 or expanding it to convictions for conduct violating section 288, even if the conviction is not under section 288. (*McCarthy, supra,* 244 Cal.App.4th at pp. 1105–1106.)

The court then determined the Legislature's use of the terms "conviction" and "convicted" in some provisions of section 1202.4 (e.g., § 1202.4, subds.

(a)(1), (2), (b)(1), (2) & (q)) and its use of the term "violations" in section 1202.4(f)(3)(F) indicates the Legislature intended the terms to have different meanings. (*McCarthy, supra,* 244 Cal.App.4th at p. 1106.) Supporting this determination, the court noted that, when the provision for noneconomic restitution was first added to section 1202.4, it expressly applied to a "conviction" for a felony violation of section 288. However, the Legislature later amended the provision to drop the word "conviction." "[B]y deleting the word 'conviction' the Legislature presumably intended to remove any requirement that defendants actually be convicted of a charge under section 288 before restitution for noneconomic losses could be awarded." (*McCarthy,* at p. 1107.) "Such an interpretation comports with the broad and liberal construction courts have given to the restitution statutes so as to effectuate the voters' intention that victim restitution be made." (*Id.* at pp. 1107–1108.)

The court next determined a construction permitting noneconomic restitution for violations for section 288, but not for violations of section 288.5, would produce an absurd result. (*McCarthy, supra,* 244 Cal.App.4th at p. 1108.) "It is well recognized that ' "child sexual abuse results in long-term emotional and psychological damage to the child victim if left untreated." ' [Citation.] And such abuse 'is not the kind of act that results in emotional and psychological harm only occasionally.' [Citation.] Why would the Legislature have chosen to permit restitution for the psychological harm caused by lewd and lascivious acts but not for the psychological harm caused by the very same conduct when charged as continuous child sexual abuse?" (*Ibid.*) "In construing the statute, we must consider the consequences flowing from a given interpretation. [Citation.] Having considered those consequences, we refuse to adopt a construction that would grant restitution for noneconomic loss to victims of lewd and lascivious acts but not to victims of what [the defendant] agrees are 'much more serious' violations of the Penal Code. 'We can think of no explanation why the Legislature could have desired such an unlikely result . . . .' " (*Id.* at pp. 1108–1109.)

Lastly, the court distinguished the *Valenti* decision on two bases. First, the *Valenti* court had limited occasion to address the proper construction of section 1202.4(f)(3)(F) because the People in *Valenti* conceded the statute did not apply to a conviction under section 288.5. (*McCarthy, supra,* 244 Cal.App.4th at p. 1111.) Second, unlike the defendant's conviction in *McCarthy,* the defendant's conviction in *Valenti* was not based on the theory the defendant committed three or more lewd and lascivious acts violating section 288. Rather, it was based on the alternative theory the defendant committed three or more acts of substantial sexual conduct under section 1203.066, subdivision (b). (*McCarthy,* at p. 1111.)

We agree with the holding in the *McCarthy* decision. We, therefore, conclude the trial court did not err in awarding noneconomic restitution to the victim under section 1202.4(f)(3)(F).

c

Although not addressed by the parties or in the *McCarthy* decision, we note other legislative history supports the *McCarthy* court's holding. The authority to award noneconomic damages to child molest victims first originated in Government Code former section 13967, the predecessor to section 1202.4. In 1991, Government Code former section 13967, subdivision (c), was amended to include two sentences. The first sentence provided: "If a defendant has been convicted of a felony violation of Section 288 of the Penal Code, restitution to the victim may be ordered whether or not the defendant is denied probation." The second sentence provided: "If the conviction is for felony violation of Section 288 of the Penal Code, the court may also order that the restitution be paid to the victim to cover noneconomic losses, including, but not limited to, psychological harm." (Gov. Code, former § 13967, as amended by Stats. 1991, ch. 657, § 1, p. 3020.)

The Legislative Counsel's Digest provides a somewhat vague summary of the amendment's import. It states, "This bill would provide that if a defendant has been convicted of *felony child molestation, as specified*, restitution to the victim may be ordered whether or not the defendant is denied probation, and the restitution may cover noneconomic losses, including, but not limited to, psychological harm." (Legis. Counsel's Dig., Sen. Bill No. 736 (1991–1992 Reg. Sess.) 4 Stats. 1991, Summary Dig., p. 275, italics added.)

However, other legislative history indicates the amendments were intended to provide an alternative avenue of compensation for child sexual molestation victims in light of the California Supreme Court's decision in *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009 [278 Cal.Rptr. 64, 804 P.2d 689] (*J. C. Penney*). (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) as amended May 15, 1991, pp. 4–5.) The *J. C. Penney* decision foreclosed the use of liability insurance proceeds as compensation by holding "insurers are not required to indemnify their insureds for damages caused by an insured's *sexual molestation of a child.*" (*J. C. Penney*, *supra*, at p. 1014, italics added.) While the court decided the case in the context of a conviction under section 288, nothing in the decision limited its holding to this context. Rather, throughout the decision the court used the term "sexual molestation" interchangeably with "child molestation" to broadly encompass "sexual fondlings, penetration, and oral copulation" as well as conduct against a child whose "essence" is the "gratification of sexual

desire." (*J. C. Penney*, at pp. 1014, 1019, 1021.) We would typically expect the Legislature to intend for any responding legislation to be of comparable scope.

Consistent with this expectation, none of the analyses prepared during the legislative process specifically referred to section 288 and all of them described the amendment's import broadly. For example, the Legislative Analyst's analysis of the amendments stated the bill increased "potential civil restitution awards to victims of *child molestation*," authorized "restitution judgments against *child molesters* regardless of probation decisions," and allowed "the court to order convicted *child molesters* to pay for noneconomic losses, such as psychological harm." (Legis. Analyst, analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) Aug. 13, 1991, p. 1, italics added.)

Other analyses were in accord. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) as amended May 15, 1991, p. 5 [the amendments increase "restitution payments to the *child molestation* victim to also cover psychological damages and noneconomic losses" (italics added)]; Assem. Ways and Means Com., Republican Caucus, analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) as amended Aug. 20, 1991, p. 1 ["Upon conviction of felony *child sexual assault*, even if the defendant is denied probation, a court may award a victim restitution for non-economic losses including psychological harm" (italics added)]; Dept. of Finance, Analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) as amended Aug. 28, 1991, p. 2 ["[Senate Bill. No.] 736, would authorize the court to order that restitution be paid to the victim by convicted *child molesters*, regardless of whether probation is denied. It would also authorize courts to order restitution to cover non-economic losses (e.g. psychological harm). By expanding the civil liability of *child molesters*, the provisions of [Senate Bill No.] 736 could increase the amount of restitution available to victims of *child abuse or assault*, through civil awards" (italics added)].)

We did not locate any analyses expressing an intent for the amendments to benefit a smaller subset of victims than those impacted by the *J. C. Penney* decision. Accordingly, we conclude the Legislature intended for section 1202.4(f)(3)(F) to apply at least as broadly as interpreted in the *McCarthy* decision.

E*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 298.

## IV

## DISPOSITION

The judgment is affirmed.

Benke, J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 17, 2017, S240751.