Filed 2/8/17

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068746 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF34145) |
| JOSE VILLAREAL MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]     Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III.A-C and E.

# I

## INTRODUCTION

A jury convicted Jose Villareal Martinez of continuous sexual abuse of a child under the age of 14 (Pen. Code,[1] § 288.5, subd. (a); count 1).[2] The court sentenced him to twelve years in prison. The court separately ordered him to pay the victim $150,000 in restitution for noneconomic damages (noneconomic restitution).

Martinez appeals, contending we must reverse his conviction because the court prejudicially erred by failing to suppress his statements to police, by admitting the recorded forensic interviews of the victim, and by declining to give the jury his entire proposed special jury instruction on innocuous touching. He further contends we must reverse the restitution order because the court lacked statutory authority to award the victim noneconomic restitution.

In the published portion of the opinion we follow *People v. McCarthy* (2016) 244 Cal.App.4th 1096 (*McCarthy*) and hold the court did not err in awarding the victim noneconomic restitution because section 1202.4, subdivision (f)(3)(F) (§ 1202.4(f)(3)(F)) authorizes such an award against a defendant convicted of violating section 288.5 if the conduct underlying the conviction also constitutes a violation of section 288. (*McCarthy*,

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

[2]     The prosecution had alternatively charged Martinez with five counts of committing a forcible lewd act upon a child (§ 288, subd. (b)(1); counts 2–6). The court dismissed these charges in light of the jury's verdict on count 1.

*supra*, at p. 1109.)  In the remaining portions of the opinion we explain why we are unpersuaded by Martinez's other contentions and, consequently, we affirm the judgment.

## II

## BACKGROUND[3]

The victim lived with Martinez and his wife.  Many times when his wife was occupied or at work, Martinez took the victim to his room and had her lie on his bed with him.  He then pulled down her clothes, put his penis on her buttocks and moved his penis up and down for about five to 10 minutes.  Each time he told her not to tell anyone.

In addition, many times when Martinez and the victim were shopping together, Martinez would condition purchases for her on her giving him "a little leg."  After he bought her something and they were in his car or a borrowed truck, he would drive slowly and use his hand to touch her chest and buttocks area under her clothes.  He would also touch her legs and pelvic area, including her vagina, over her clothes.  Each time he told her not to tell anyone.

However, the victim eventually told Martinez's wife about Martinez's conduct and Martinez's wife told the victim's mother about it.  Martinez's wife also reported Martinez's conduct to police.

A social worker interviewed the victim three times.  The second interview was two weeks after the first and the third interview was two months after the second.  In the first

---

3    To preserve the confidentiality of the victim's identity our summary omits some factual details which, while superficially relevant to the issues raised on appeal, are not essential to our decision.

interview, the victim only told the social worker about the conduct in the vehicles. In the second interview, the victim told the social worker about the conduct in Martinez's bedroom. The victim delayed telling her mother, Martinez's wife or the social worker about the conduct in Martinez's bedroom because Martinez had told her not to tell anyone and she was afraid of what he might do to her.

The social worker testified child sexual abuse victims commonly do not disclose everything during the initial interview. An expert in conducting forensic interviews of child sexual abuse victims similarly testified delayed disclosure of childhood sexual abuse is normal, not exceptional. The expert also testified incremental disclosure of childhood sexual abuse is not unusual.

At the behest of a police investigator, the victim and her mother made a pretext phone call to Martinez. During the call, which became emotional, the victim told Martinez she did not like what happened to her in the vehicles and in Martinez's bed. Martinez apologized for the conduct.

## III

## DISCUSSION

### A

#### 1

Shortly after the pretext phone call between the victim and Martinez, a police investigator interviewed Martinez. At the outset of the interview, the investigator provided Martinez with the advisements required by *Miranda v. Arizona* (1966) 384 U.S. 436, 478–479 (*Miranda* advisements), which Martinez stated he understood perfectly.

4

The investigator told Martinez the victim had reported several things and asked Martinez if he knew what happened to the victim and what she reported. Martinez said the victim's mother had told him something was wrong with the victim. The victim also said some things to him, but he thought the victim's remarks were prompted by his wife's bad temper.

Martinez said two to three weeks earlier he came home and found his wife angry. She packed up and left with the victim. When the investigator asked him about his wife's anger and the current state of their relationship, he replied, "Look, here between us, I'm going to tell you something personal." He said he had initially loved his wife "with delirium," but little by little their relationship was ending and, although she pressured him, he no longer wanted to be intimate with her. He no longer found her physically attractive and thought she was too bossy and foul-mouthed. He then asked, "All this is between you and me, right?" He went to explain his wife had been his mistress, but she insisted he marry her after his first wife died of cancer.

Because Martinez was becoming visibly emotional discussing his relationship with his wife, the investigator overtly shifted the topic back to the victim's allegations. With the topic shift, the interview intensified as the investigator began pressing Martinez to explain what happened between him and the victim. After Martinez repeatedly denied any inappropriate conduct, the investigator confronted him with a recording of the pretext call. Martinez eventually admitted he had told the victim he would buy her things at the store in exchange for her giving him some leg. However, he denied having any inappropriate intent. He also admitted he may have touched the victim's bottom while

5

they lay in his bed, but he denied ever pulling her shorts down, touching her with his shorts down, or touching her with any inappropriate intent.

Before trial, Martinez moved to suppress the statements he made during the interview on the ground the investigator agreed to keep Martinez's statements between the two of them. At a subsequent hearing on the motion, the investigator testified the agreement to keep the conversation just between the two of them referred to Martinez's remarks about his personal, intimate relationship with his wife. The court subsequently determined this was the only reasonable interpretation of the exchange and denied the motion.

2

Relying on *People v. Quartermain* (1997) 16 Cal.4th 600 (*Quartermain*), Martinez contends the court prejudicially erred by failing to suppress his statements to police. We review this contention de novo. (*People v. Linton* (2013) 56 Cal.4th 1146, 1176–1177.)

As relevant to this appeal, the *Quartermain* case held it is fundamentally unfair and a violation of due process for the prosecution to use a defendant's statement at trial in breach of an explicit promise not to do so. (*Quartermain*, *supra*, 16 Cal.4th. at pp. 620–621.) In this case, however, there was no explicit promise to refrain from using Martinez's statements about his conduct with the victim at trial. To the contrary, the *Miranda* advisements, which Martinez stated he understood perfectly, informed him his statements could and would be used at trial. Although Martinez twice requested statements be kept between him and the investigator, we agree with the trial court these

6

requests can only reasonably be interpreted as applying to Martinez's statements about his intimate relationship with his wife.

After the investigator shifted the interview away from the topic of Martinez's relationship with his wife, Martinez neither requested nor alluded to a belief his subsequent statements would remain confidential. In addition, as the investigator intensified his efforts to obtain a confession, Martinez's remarks became noticeably less frank and more self-serving. He consistently portrayed himself as the victim's loving, devoted, doting, sometimes absent-minded caretaker and his wife as a manipulative shrew. Although he acknowledged certain conduct, he characterized the conduct as innocuous and repeatedly denied any lewd intent. He also repeatedly attributed the victim's allegations to his wife's influence. By purposefully attempting to use the interview to his best advantage, Martinez demonstrated he both understood and expected his statements would not remain confidential. Accordingly, we conclude the court did not err in denying Martinez's suppression motion.

B

1

Before trial, the prosecution moved under Evidence Code section 1360 for an order allowing admission of the victim's out-of-court statements, including the recorded forensic interviews with the social worker. Over Martinez's objection, the court allowed admission of the first two interviews, finding the interviews met the criteria in Evidence Code section 1360 and would assist the jury in evaluating the victim's credibility. The court declined to allow admission of the third interview, finding it redundant.

Martinez contends the court prejudicially erred in admitting the interviews because the victim's statements lacked the indicia of reliability required for admission under Evidence Code section 1360.[4]  More particularly, Martinez contends the victim's statements were not spontaneous and the statements in her second interview contradicted the statements in her first interview by "includ[ing] new and far more egregious allegations, incorporat[ing] language not generally utilized by a child her age and … made after a two-week exposure to [Martinez's wife] … who [had a] strong motive to fabricate because she was hostile to [Martinez] and stood to gain by his conviction and incarceration."  Because the confrontation clause is not implicated in this case (see fn. 4, *ante*), we review the court's decision to admit evidence under Evidence Code section 1360 for abuse of discretion.  (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367; cf. *People v. Eccleston* (2001) 89 Cal.App.4th 436, 445–446.)

"[Evidence Code section] 1360 creates a limited exception to the hearsay rule in criminal prosecutions for a child's statements describing acts of child abuse or neglect, including statements describing sexual abuse.  [Citations.]  [Evidence Code section] 1360 safeguards the reliability of a child's hearsay statements by requiring that:  (1) the court find, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances surrounding the statement(s) provide sufficient indicia of reliability; (2)

---

4      In the court below, Martinez also challenged the admission of the statements on the grounds they violated his rights under the Sixth Amendment's confrontation clause and they were more prejudicial than probative under Evidence Code section 352.  He did not reassert these grounds on appeal.

the child either testifies at the proceedings, or, if the child is unavailable to testify, other evidence corroborates the out-of-court statements; and (3) the proponent of the statement gives notice to the adverse party sufficiently in advance of the proceeding to provide him or her with a fair opportunity to defend against the statement." (*People v. Roberto V.*, *supra*, 93 Cal.App.4th at p. 1367, fn. omitted.)

Martinez does not dispute the second and third requirements were met. He disputes only whether the first requirement was met. The nonexclusive factors relevant to determining whether the first requirement was met include: (1) the victim's mental state; (2) whether the victim's statements were spontaneous and consistently repeated; (3) whether the victim used terminology unexpected from a child the victim's age; and (4) whether the victim had a motive to fabricate the statements. (*In re Cindy L.* (1997) 17 Cal.4th 15, 29–30; *People v. Eccleston*, *supra*, 89 Cal.App.4th at p. 445; *People v. Brodit* (1998) 61 Cal.App.4th 1312, 1329–1330.)

Applying these factors in this cases, the record shows the victim first disclosed the conduct in the vehicles to her classmates. The victim later told her mother, Martinez's wife, police officers, and the social worker about this conduct, albeit with some variation in her statements. After the first interview with the social worker, the victim told her mother and Martinez's wife about the conduct in the bedroom. She repeated the statements, again with some variation, to police officers and the social worker. Her mental state when she made the statements was predictably fearful and upset. The variations in her statements and the delayed disclosure of the bedroom conduct were also predictable given her age, differences in the phrasing of the questions asked of her, the

9

need for interpreter assistance, the length of time between interviews and the nature of conduct.

In addition, while Martinez's wife may have had a motive to harm Martinez because of her souring relationship with him, the victim loved Martinez, she did not have an apparent motive to lie, and there is scant evidence Martinez's wife coached or influenced the victim's statements. Although Martinez points to certain, arguably sophisticated terms in the victim's statements as evidence of his wife's coaching, we note these terms were not the victim's actual words. Rather, these terms were an adult Spanish interpreter's English translation of the victim's actual words. We have no means of knowing from this record whether the victim's actual words were unusually sophisticated. We, therefore, cannot infer from the translated terms the victim's statements were coached. Accordingly, we conclude Martinez has not established the court abused its discretion by admitting the victim's statements under Evidence Code section 1360.

C

1

a

Before deliberations, the court instructed the jury on the applicable law with standard jury instructions, including CALCRIM Nos. 225, 252, and 1120.

i

The CALCRIM No. 225 instruction informed the jury: "The People must prove not only that the defendant did the acts charged, but also that he acted with a particular

intent or mental state.  The instruction for each crime explains the intent or mental state required.

"An intent or mental state may be proved by circumstantial evidence.  [¶] Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

"Also, before you may rely on circumstantial evidence to conclude that the defendant had the required intent or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent or mental state.  If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent or mental state and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the intent or mental state was not proved by the circumstantial evidence.  However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

ii

The CALCRIM No. 252 instruction informed the jury:  "The crime[] charged in Count[] One … require[s] proof of the union, or joint operation, of act and wrongful intent.  [¶] … [¶] The following crime[] require[s] a specific intent or mental state:  … Count one (1).  [¶] For you to find a person guilty of [this] crime[] that person must not only intentionally commit the prohibited act, but must do so with a specific intent and

11

mental state.  The act and the specific intent and mental state required are explained in the instruction for that crime."

iii

The CALCRIM No. 1120 instruction informed the jury:  "The defendant is charged in count one (1) with continuous sexual abuse of a child under the age of 14 years in violation of Penal Code section 288.5(a).

"To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant lived in the same home with a minor child; [¶] 2. The defendant engaged in three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child; [¶] 3. Three or more months passed between the first and last acts; [¶] AND [¶] 4. The child was under the age of 14 years at the time of the acts[.]  [¶] … [¶]

"Lewd or lascivious conduct is any willful touching of a child accomplished with the intent to sexually arouse the perpetrator or the child.  Contact with the child's bare skin or private parts is not required.  Any part of the child's body or the clothes the child is wearing may be touched.

"Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.  [¶] You cannot convict the defendant unless all of you agree that the Defendant committed three or more acts over a period of at least three months, but you do not all need to agree on which three acts were committed.  [¶] Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or child

12

is not required for lewd or lascivious conduct. [¶] It is not a defense that the child may have consented to the act."

b

Martinez also requested the court give a special jury instruction on innocuous touching. The proposed instruction read:

"The lewd character of an activity cannot logically be determined separate and apart from the perpetrator's intent. It is common knowledge that children are routinely cuddled, disrobed, stroked, examined, and groomed as part of a normal and healthy upbringing. On the other hand, any of these intimate acts may also be undertaken for the purpose of sexual arousal. Thus, depending upon the actor's motivation, innocent or sexual, such behavior may or may not fall within the prohibitions of lewd or lascivious acts.

"Whether the touching is lewd or lascivious depends on whether it was committed with the required sexual motivation and intent. An inadvertent or casual non-offensive touching is not lewd or lascivious touching unless the touching was done with an intent to arouse, appeal to or gratify either the lust, passions or sexual desires of the defendant or the child. If you have a reasonable doubt as to whether the alleged lewd and lascivious acts were committed with the required sexual motivation and intent, you must resolve that doubt in favor of the defendant and return a verdict of not guilty."

The court agreed to give and gave the second paragraph of the instruction, but not the first paragraph. The court found the first paragraph, while a correct statement of the

13

law, was not appropriate for a jury instruction because it was duplicative, confusing and unnecessary.

2

Martinez contends the court prejudicially erred by failing to give the first paragraph of the instruction because it was a correct statement of the law and consistent with his theory of the case. We apply a de novo standard of review in determining whether the court properly instructed the jury. (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1418.)

" '[I]n appropriate circumstances' a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case by, among other things, relating the reasonable doubt standard of proof to particular elements of the crime charged. [Citations.] But a trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation]. An instruction that does no more than affirm that the prosecution must prove a particular element of a charged offense beyond a reasonable doubt merely duplicates the standard instructions defining the charged offense and explaining the prosecution's burden to prove guilt beyond a reasonable doubt. Accordingly, a trial court is required to give a requested instruction relating the reasonable doubt standard of proof to a particular element of the crime charged only when the point of the instruction would not be readily apparent to the jury from the remaining instructions." (*People v. Bolden* (2002) 29 Cal.4th 515, 558–559.)

Here, the chief purpose of the first paragraph of the special instruction was to explain that whether a touching is lewd or lascivious depends on the intent of the person doing the touching, not the touch itself. The standard instructions the court gave accurately and completely covered this point. The second paragraph of the special instruction further emphasized this point. The particular circumstances of this case did not suggest a need for additional clarification because the touchings at issue, if the jury believed they occurred and were not fabricated at the behest of Martinez's wife, could never reasonably be considered innocuous. Regardless, the proposed special instruction added nothing substantive to the standard instructions. Therefore, the court did not err in declining to give the first paragraph of the special instruction. (*People v. Bolden*, *supra*, 29 Cal.4th at p. 559.)

The fact the first paragraph of the special instruction is derived from language in *People v. Martinez* (1995) 11 Cal.4th 434, at page 450, does not alter our conclusion. A court may properly decline to give a special instruction derived from language in a California Supreme Court case when, as here, the concepts expressed in the language are generally incorporated into and, therefore, duplicative of the concepts expressed in other applicable instructions. (See *People v. Moon* (2005) 37 Cal.4th 1, 30–31.)

D

1

At the sentencing hearing, the court noted there had been no request for economic restitution, but section 1202.4(f)(3)(F) allowed the court to award noneconomic restitution to victims of section 288 offenses. The court stated it believed the victim

15

would require counseling in the future and "it's the constitutional right of the victim to be compensated for that under the statute." The court tentatively decided to award the victim $150,000, subject to a hearing and briefing by the parties.

In subsequent briefing, Martinez argued the availability of noneconomic restitution under section 1202.4(f)(3)(F) is limited to convictions under section 288 and does not apply to convictions under section 288.5. The prosecution argued the statute applied to all felony convictions for child molestation. After considering these arguments, the court confirmed its tentative decision and awarded the victim noneconomic restitution of $150,000.

2

With exceptions not applicable here, section 1202.4, subdivision (f), provides in part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim … in an amount established by court order, based on the amount of loss claimed by the victim … or any other showing to the court. … [¶] … [¶] (3) To the extent possible, the restitution order shall be … of a dollar amount that is sufficient to fully reimburse the victim … for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] … [¶] (F) Noneconomic losses, including, but not limited to, psychological harm, *for felony violations of Section 288*." (Italics added.)

Martinez contends we must reverse the restitution order because, according to its plain language, section 1202.4(f)(3)(F) only authorizes noneconomic restitution for

16

violations of section 288. It does not authorize noneconomic restitution for violations of section 288.5.

3

We review questions of statutory interpretation de novo. (*McCarthy*, *supra*, 244 Cal.App.4th at pp. 1103–1104.) "In construing the statute, 'our principal task is to ascertain the intent of the Legislature.' [Citation.] The process of statutory interpretation may involve up to three steps. [Citation.] First, because the statutory language is generally the most reliable indicator of legislative intent, we look to the words themselves, giving them their ordinary meanings and construing them in context. [Citation.] We do not consider statutory language in isolation 'but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision.' [Citation.] Although we must follow the statute's plain meaning if such meaning can be discerned, we will not do so if adherence to plain meaning 'would lead to absurd results the Legislature could not have intended.' [Citation.] 'In such circumstances, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' [Citations.]

" 'If the plain language of the statute does not resolve the inquiry, as a second step we may turn to maxims of construction, " 'which serve as aids in the sense that they express familiar insights about conventional language usage.' " [Citations.]' [Citation.] We may also consider other extrinsic aids to statutory construction, including the statute's legislative history and the historical circumstances of its enactment. [Citation.] In addition, since we here construe a restitution statute, 'we are guided by the broad

17

constitutional mandate of California Constitution, article I, section 28, subdivision (b).' [Citation.] ' "In keeping with the [voters'] 'unequivocal intention' that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed." [Citations.]' [Citation.]

"Finally, '[t]o the extent that uncertainty remains in interpreting statutory language, "consideration should be given to the consequences that will flow from a particular interpretation" [citation] … .' [Citation.] In this final step, we ' "apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable [citations]." ' " (*McCarthy*, *supra*, 244 Cal.App.4th at pp. 1104–1105.)

4

a

Two appellate courts have recently considered and reached differing conclusions on whether section 1202.4(f)(3)(F) applies to convictions under section 288.5. In the first case, *People v. Valenti* (2016) 243 Cal.App.4th 1140 (*Valenti*), the People conceded victims of the crime of continuous sexual abuse under section 288.5 are not eligible for noneconomic restitution under section 1202.4(f)(3)(F). (*Valenti*, *supra*, at p. 1181.) The appellate court agreed, concluding "[t]he plain language of section 1202.4[(f)(3)(F)] limits noneconomic restitution awards to 'felony violations of Section 288.' It does not include section 288.5. … 'Sections 288 and 288.5 are not … interchangeable statutes.' [Citation.] Therefore, contrary to the prosecutor's representations below, the court was *not* 'allowed to award restitution to victims in [section] 288[-]*type* cases.' 'It is not our job

18

to insert language in a statute which is not there.  Had the Legislature wanted to include section 288.5' in the restitution statute, 'it was capable of doing so.  It did not.  The People's remedy lies with the Legislature and that body's power to amend the law, not with us, because we are charged with enforcing statutes as they are written,' not as the prosecutor wishes they were written."  (*Id*. at pp. 1181–1182.)

b

A month later, in *McCarthy*, *supra*, 244 Cal.App.4th 1096, another appellate court concluded section 1202.4(f)(3)(F) applies to convictions for continuous sexual abuse of a child under section 288.5 "if the conduct of which the defendant was convicted also constitutes a violation of section 288, even if the defendant was not convicted under [section 288]."  (*McCarthy*, at p. 1109)

In reaching this conclusion, the *McCarthy* court first determined the plain language of section 1202.4(f)(3)(F) is reasonably susceptible to an interpretation either limiting it to convictions under section 288 or expanding it to convictions for conduct violating section 288, even if the conviction is not under section 288.  (*McCarthy*, *supra*, 244 Cal.App.4th at pp.1105–1106.)

The court then determined the Legislature's use of the terms "conviction" and "convicted" in some provisions of section 1202.4 (e.g., § 1202.4, subds. (a)(1), (2), (b)(1), (2) & (q)) and its use of the term "violations" in section 1202.4(f)(3)(F) indicates the Legislature intended the terms to have different meanings.  (*McCarthy*, *supra*, 244 Cal.App.4th at p. 1106.)  Supporting this determination, the court noted that, when the provision for noneconomic restitution was first added to section 1202.4, it expressly

19

applied to a "conviction" for a felony violation of section 288. However, the Legislature later amended the provision to drop the word "conviction." "[B]y deleting the word 'conviction' the Legislature presumably intended to remove any requirement that defendants actually be convicted of a charge under section 288 before restitution for noneconomic losses could be awarded." (*McCarthy*, at p. 1107.) "Such an interpretation comports with the broad and liberal construction courts have given to the restitution statutes so as to effectuate the voters' intention that victim restitution be made." (*Id.* at pp. 1107–1108.)

The court next determined a construction permitting noneconomic restitution for violations for section 288, but not for violations of section 288.5, would produce an absurd result. (*McCarthy*, *supra*, 244 Cal.App.4th at p. 1108.) "It is well recognized that ' "child sexual abuse results in long-term emotional and psychological damage to the child victim if left untreated." ' [Citations.] And such abuse 'is not the kind of act that results in emotional and psychological harm only occasionally.' [Citation.] Why would the Legislature have chosen to permit restitution for the psychological harm caused by lewd and lascivious acts but not for the psychological harm caused by the very same conduct when charged as continuous child sexual abuse?" (*Ibid.*) "In construing the statute, we must consider the consequences flowing from a given interpretation. [Citation.] Having considered those consequences, we refuse to adopt a construction that would grant restitution for noneconomic loss to victims of lewd and lascivious acts but not to victims of what [the defendant] agrees are 'much more serious' violations of the

20

Penal Code. 'We can think of no explanation why the Legislature could have desired such an unlikely result." (*Id.* at pp. 1108–1109.)

Lastly, the court distinguished the *Valenti* decision on two bases. First, the *Valenti* court had limited occasion to address the proper construction of section 1202.4 (f)(3)(F) because the People in *Valenti* conceded the statute did not apply to a conviction under section 288.5. (*McCarthy*, *supra*, 244 Cal.App.4th at p. 1111.) Second, unlike the defendant's conviction in *McCarthy*, the defendant's conviction in *Valenti* was not based on the theory the defendant committed three or more lewd and lascivious acts violating section 288. Rather, it was based on the alternative theory the defendant committed three or more acts of substantial sexual conduct under section 1203.066, subdivision (b). (*McCarthy*, at p. 1111.)

We agree with the holding in the *McCarthy* decision. We, therefore, conclude the trial court did not err in awarding noneconomic restitution to the victim under section 1202.4(f)(3)(F).

c

Although not addressed by the parties or in the *McCarthy* decision, we note other legislative history supports the *McCarthy* court's holding. The authority to award noneconomic damages to child molest victims first originated in Government Code section 13967, the predecessor to section 1202.4. In 1991, Government Code section 13967, subdivision (c), was amended to include two sentences. The first sentence provided: "If a defendant has been convicted of a felony violation of section 288 of the Penal Code, restitution to the victim may be ordered whether or not the defendant is

21

denied probation." The second sentence provided: "If the conviction is for felony violation of section 288 of the Penal Code, the court may also order that the restitution be paid to the victim to cover noneconomic losses, including, but not limited to, psychological harm." (Former Gov. Code, § 13967, as amended by Stats. 1991, c. 657, § 1.)

The Legislative Counsel's Digest provides a somewhat vague summary of the amendments' import. It states, "This bill would provide that if a defendant has been convicted of *felony child molestation, as specified*, restitution to the victim may be ordered whether or not the defendant is denied probation, and the restitution may cover noneconomic losses, including, but not limited to, psychological harm." (Legis. Counsel's Dig., Sen. Bill No. 736 (1991–1992 Reg. Sess.) Summary Dig., p. 275, italics added.)

However, other legislative history indicates the amendments were intended to provide an alternative avenue of compensation for child sexual molestation victims in light of the California Supreme Court's decision in *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009 (*J. C. Penney*). (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) as amended May 15, 1991, pp. 4–5.) The *J. C. Penney* decision foreclosed the use of liability insurance proceeds as compensation by holding "insurers are not required to indemnify their insureds for damages caused by an insured's *sexual molestation of a child*." (*J. C. Penney*, *supra*, at p. 1014, italics added.) While the court decided the case in the context of a conviction under section 288, nothing in the decision limited its holding to this context. Rather, throughout the decision the

22

court used the term "sexual molestation" interchangeably with "child molestation" to broadly encompass "sexual fondlings, penetration, and oral copulation" as well as conduct against a child whose "essence" is the "gratification of sexual desire." (*J. C. Penney,* at pp. 1014, 1019, 1021.) We would typically expect the Legislature to intend for any responding legislation to be of comparable scope.

Consistent with this expectation, none of the analyses prepared during the legislative process specifically referred to section 288 and all of them described the amendments' import broadly. For example, the Legislative Analyst's analysis of the amendments stated the bill increased "potential civil restitution awards to victims of *child molestation*," authorized "restitution judgments against *child molesters* regardless of probation decisions," and allowed "the court to order convicted *child molesters* to pay for noneconomic losses, such as psychological harm." (Legis. Analyst, analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) Aug. 13, 1991, p. 1, italics added.)

Other analyses were in accord. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 736 (1991-1992 Reg. Sess.) as amended May 15, 1991, p. 5 [the amendments increase "restitution payments to the *child molestation* victim to also cover psychological damages and noneconomic losses," italics added]; Assem. Ways and Means Com., Republican Analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) as amended Aug. 20, 1991, p. 1 ["Upon conviction of felony *child sexual assault*, even if the defendant is denied probation, a court may award a victim restitution for non-economic losses including psychological harm," italics added]; Dept. of Finance, analysis of Sen. Bill No. 736 (1991–1992 Reg. Sess.) as amended Aug. 28, 1991, p. 2 ["[Sen. Bill. No.] 736, would

23

authorize the court to order that restitution be paid to the victim by convicted *child molesters*, regardless of whether probation is denied. It would also authorize courts to order restitution to cover non-economic losses (e.g. psychological harm). By expanding the civil liability of c*hild molesters*, the provisions of [Sen. Bill No.] 736 could increase the amount of restitution available to victims of *child abuse or assault*, through civil awards " italics added].)

We did not locate any analyses expressing an intent for the amendments to benefit a smaller subset of victims than those impacted by the *J. C. Penney* decision. Accordingly, we conclude the Legislature intended for section 1202.4(f)(3)(F) to apply at least as broadly as interpreted in the *McCarthy* decision.

E

Lastly, Martinez contends the award of noneconomic damages violated his Sixth Amendment right to a jury trial under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] (*Apprendi*) and its progeny. Martinez acknowledges this argument was rejected in *People v. Smith* (2011) 198 Cal.App.4th 415 (*Smith*), but he contends the *Smith* case was wrongly decided.

The *Smith* court held "a restitution order for noneconomic damages does not give rise to a jury trial right." (*Smith*, *supra*, 198 Cal.App.4th at p. 433.) Although the defendant in *Smith* acknowledged a court may award economic restitution at sentencing without a jury determination, he argued that "because the determination of the amount of noneconomic damages is subjective, the jury must make that determination." (*Ibid.*) The court rejected the argument, stating "this claim has no merit because there is no basis for

24

distinguishing jury trial rights, or lack thereof, for restitution orders for economic damages and restitution orders for noneconomic damages. In both cases, the trial court is performing a task that, in a civil case, a jury would perform." (*Ibid.*)

We agree with the *Smith* court's conclusion. The *Apprendi* decision requires a jury determination of any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the statutory maximum. (*Apprendi*, *supra*, 530 U.S. at p. 490.) However, this rule does not apply to direct victim restitution because direct victim restitution is not a criminal penalty. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1398; *People v. Pangan* (2013) 213 Cal.Ap.4th 574, 585.) "[D]irect victim restitution is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits. It is not increased 'punishment.' " (*People v. Pangan*, *supra*, at p. 585; accord, *People v. Foalima*, *supra*, at p. 1398.) The subjective nature of calculating the amount of a noneconomic restitution award does not alter the award's character. The award remains compensatory, not punitive.

## IV

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

HUFFMAN, J.