Filed 7/6/23  P. v. Vasquez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARIO NIEBLAS VASQUEZ,<br><br>    Defendant and Appellant. | D080394<br><br><br>(Super. Ct. No. CF-4522) |

APPEAL from a judgment of the Superior Court of Imperial County, Poli Flores, Judge.  Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Anthony DaSilva, Deputy Attorneys General, for Plaintiff and Respondent.


In April 1999, a jury convicted Mario Nieblas Vasquez of the second degree murder of Ruben R. and found not true a personal firearm use

enhancement. After Vasquez admitted a prior strike conviction, the trial court sentenced him to 30 years to life. In October 1999, a separate jury convicted Vasquez of the first degree murder of Jose V. For this conviction, the court sentenced Vasquez to a total term of 50 years to life, and ordered the sentence to run consecutively to imposed for the murder of Ruben R. Thereafter, this court reversed the conviction for the murder of Ruben R. and affirmed the conviction for the murder of Jose V.[1]

In 2021, Vasquez filed a petition for resentencing under Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended the "felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The law also provided a mechanism for resentencing of individuals whose convictions would not meet the new standard. (Pen. Code, § 1172.6.[2])

After appointing counsel, the trial court issued an order to show cause on Vasquez's petition for resentencing as it related to his conviction for second degree murder in the first trial, but summarily denied the petition as it related to the first degree murder conviction in the subsequent trial.

---

[1] Vasquez later pleaded guilty to manslaughter for the murder of Ruben R. and was sentenced to 12 years in prison.

[2] At the time Vasquez filed his petition for resentencing, section 1170.95 governed the resentencing of murder convictions. Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). We will refer to the statute in its renumbered form. In addition, subsequent undesignated statutory references are to the Penal Code.

Vasquez now challenges that denial, asserting the trial court engaged in impermissible fact finding by relying on this court's earlier opinion affirming the conviction for the murder of Jose V. In response to this argument, the Attorney General concedes the court erred by relying on our earlier opinion, but argues the error was harmless because the record of conviction establishes as a matter of law that the jury found Vasquez personally harbored the intent to kill in committing first degree murder, either as the killer or as a direct aider and abettor of the killing. We agree with the Attorney General that the trial court's error was harmless. Accordingly, we affirm the order denying the petition related to the murder of Jose V.

BACKGROUND

A. *Factual Background*

The following background is taken from this court's nonpublished opinion in *People v. Vasquez* (Mar. 15, 2002, D033853/34930):

"A. People's Case

"In March of 1997, Jose V. appeared to his mother to be frightened and acting as if someone was following him. His mother, Rosa Salcedo, noticed that he would look out windows of their house to see if someone was after him. On one occasion when Jose V. appeared frightened, his mother noticed Vasquez's car passing their house very slowly. Jose V.'s mother took down Vasquez's license plate number (3HWC932).

"On one occasion Jose V.'s mother pointed out Gonzalez[3] to him. Jose V. told his mother, 'Don't point, because he could do something to [me].'

"On March 24, 1997, at approximately 11:30 p.m., Jose V. was with his friend Claudia Aragon (Aragon). They

---

3    Gonzalez refers to Johnny Gonzalez, who was Vasquez's codefendant in the case.

3

were at Aragon's mother's house and Jose V. appeared to be 'watching his back.' They decided to walk to Aragon's house through an alleyway. As they entered the alley, a dark car drove up to them and stopped next to them. Vasquez was driving the car and Gonzalez was a passenger. Gonzalez told Jose V. to come with them. Jose V. was forced into the car.[] Aragon walked away by herself and never saw Jose V. again.

"The following morning, at approximately 7:30 a.m., Jose V.'s dead body was found near some railroad tracks in El Centro. The body had six gunshot wounds. Five of the gunshot wounds were to the head and were the cause of death. Five bullets removed from the body were determined to be .22–caliber long rifle bullets. Soot and stippling evidence present on the body indicated that some of the wounds were inflicted with the gun being an inch or less away from the victim. Fresh tire tracks were found leading up to the body. Shoe prints were also discovered in the area of the body.

"When Jose V. failed to call Aragon the next day, she became concerned. Aragon called Jose V.'s mother (Rosa Salcedo) and told her something had happened to Jose V. When Jose V. failed to come home that night, Rosa Salcedo called the police and reported him missing. She provided police with Vasquez's license plate number.

"Police then impounded Vasquez's car. A .380–caliber handgun and a knife were found in the car. Tire tread impressions were collected from Vasquez's car. The four tires on Vasquez's car each had a different tread design. All four exemplars taken from Vasquez's car matched tire impressions found near Jose V.'s body.

"On May 20, 1997, Gonzalez waved down El Centro Police Officer Pete Peraza (Officer Peraza). Gonzalez was nervous, excited and hyperventilating. Gonzalez was bleeding from what appeared to be stab wounds and had blood on his chest and face. Officer Peraza called medical personnel to the scene.

4

"While still in his excited state, Gonzalez told Officer Peraza that the same people that killed his 'home boy' were trying to kill him as well. Gonzalez told Officer Peraza that his 'home boy' was Jose V.

"In May of 1997, Pineda was having conversations with Vasquez about Gonzalez. Vasquez told Pineda that he was upset with Gonzalez because Gonzalez was 'going around discussing a murder' that Vasquez had committed. Vasquez told Pineda the murder he was referring to was the murder of Jose V.

"With regard to the stabbing of Gonzalez, Vasquez told Pineda that he and two others had caught Gonzalez at a baseball field and stabbed him because Gonzalez had been talking too much about the murder of Jose V. and because Gonzalez owed Vasquez money for an AK–47 rifle Vasquez had sold him.

"Pineda also had another conversation with Vasquez wherein Pineda told him that he was bringing 'a lot of heat' onto them because of the murder of Jose V. Vasquez never denied killing Jose V. during this conversation.

"Pineda also told Vasquez that if he went to prison for killing another Hispanic from Southern California with an accomplice who was from Northern California,[] he would have a lot of problems in prison. Upon hearing this statement by Pineda, Vasquez did not deny killing Jose V.

"Vasquez told Pineda that Jose V. had shot at Vasquez's vehicle. The shooting resulted in Gonzalez being shot in the leg and Vasquez sustaining a grazing flesh wound to his back shoulder area. Vasquez believed that Jose V.'s intended victim was 'Tiny' Suarez, who was riding in Vasquez's vehicle, along with Vasquez and Gonzalez, at the time of the shooting. Prior to Jose V.'s murder, Vasquez told Pineda that he was going to 'take care of it' i.e., that he was going to take care of the person who shot at his car.[]

"Vasquez lent his friend Cristobal Lopez (Lopez) a .22–caliber revolver containing .22–caliber long rifle bullets prior to the shooting of Jose V. Vasquez told Lopez that .22–caliber long rifle bullets were in the gun. Prior to the murder of Jose V., Vasquez and Gonzalez showed up at Lopez's house in Vasquez's car and picked up the gun from Lopez. Lopez never examined the gun or fired it while it was in his possession.

"B. Defense Case

"Aragon was the sole witness presented by the defense. She stated that after she saw Jose V. picked up in the alley, she never saw Vasquez drive by her house, and Vasquez did not harass her in any way. She was afraid of Gonzalez because he was the one who spoke to Jose V. prior to his death and, after Jose V.'s death, Gonzalez would 'go around' her house. It was also stipulated that in an interview with police Aragon had denied seeing Vasquez's face in the car that approached her and Jose V. in the alley.

"C. People's Rebuttal

"In another interview with police, Aragon stated that she was certain that it was Vasquez's black Mazda that pulled into the alley, and she was positive that Vasquez was driving the car." (*Vasquez, supra*, D033853.)

In March 1998, the district attorney charged Vasquez and co-defendant Gonzalez with the murder of Jose V. (§ 187, count 1) and conspiracy to commit the murder (§ 182, count 2). The charging information also alleged Vasquez suffered a prior strike conviction (§ 667, subds. (b)–(i)) and that he personally used a firearm (§ 12022.5, subd. (a)). In October, the case was consolidated with another superior court case, Case No. CF 4399, in which Vasquez was charged with the attempted murder (count 3) and kidnapping

6

(count 4) of Gonzalez. The charges against Gonzalez were then severed, and Gonzalez pleaded guilty to assault and was sentenced to 14 years in prison.

According to this court's prior opinion, before trial the court granted Vasquez's motion for dismissal of the conspiracy charge related to the killing of Jose V. and the kidnapping charge related to Gonzalez. Our opinion also indicates the court dismissed the related personal firearm use enhancement allegation. At the conclusion of the trial, the jury convicted Vasquez of the first degree murder of Jose V. and acquitted him of the attempted murder of Gonzalez. Thereafter, the court sentenced Vasquez to a total term of 50 years to life, consisting of 25 years for the murder conviction, doubled for a prior strike that Vasquez admitted. The sentence was ordered to run consecutively to the 30-years to life sentence imposed for the second degree murder of Ruben R.

Vasquez appealed from both convictions, and we consolidated the appeals. We affirmed the conviction related to the killing of Jose V. and reversed the conviction related to the killing of Ruben R. based on the trial court's failure to instruct the jury on aiding and abetting liability. Thereafter, Vasquez pleaded guilty to manslaughter for the killing of Ruben R. and was sentenced to 12 years in prison.

B. *Resentencing Proceedings*

On April 29, 2021, Vasquez filed a form petition for resentencing pursuant to current section 1172.6, alleging he was convicted of first degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine, he was not the actual killer, did not with intent to kill aid and abet the actual killer in committing first degree murder, and was not

7

a major participant in the felony and did not act with reckless indifference to human life.  On June 3, 2021, the trial court appointed counsel for Vasquez.

After briefing by the parties, a hearing on the petitions took place on April 21, 2022.  The court first determined that Vasquez made the requisite prima facie showing with respect to his second degree murder conviction in the case involving the killing of Ruben R. and issued an order to show cause why relief should not be granted in accordance with section 1172.6.  The court then turned to the Jose V. murder conviction.  Relying on this court's decision affirming the conviction, the court found that the factual background set forth in the opinion established "Vasquez was the actual shooter, and at the very least, was a participant in the shooting if he wasn't the actual shooter."  The court, however, acknowledged that midway through the trial, the court struck the personal firearm use enhancement allegation against Vasquez.  Vasquez's attorney reiterated this fact and argued the dismissal of the allegation showed that Vasquez was not the actual shooter.  The court then denied the petition as to the Jose V. conviction.

Vasquez appealed from the court's denial.

DISCUSSION

I

*Legal Principles*

To protect the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability" (Stats. 2018, ch. 1015, § 1, subd. (d)), the Legislature enacted Senate Bill 1437 to narrow the scope of liability under the felony murder rule and under the natural and probable consequences doctrine.  The law also provides a mechanism by which individuals convicted under the old standard could petition for resentencing if they could not be convicted under

8

the new, narrower standard. (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Senate Bill 1437 effectuated its legislative goal by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, §§ 2 & 3.) As amended, section 188 states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Amended section 189, subdivision (e) states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The legislature also enacted section 1172.6, which established the "procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 957.) Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, amended section 1172.6 in several respects, "including (1) clarifying that, in some circumstances, the same relief available to persons convicted of murder is also available to persons convicted of attempted murder or manslaughter (§ 1170.95, subd. (a); Stats. 2021, ch. 551, §§ 1, subd. (a), 2; and (2) addressing various aspects of the petition procedure, including the petitioner's right to counsel, the standard for determining the existence of a

prima facie case, the burden of proof at the hearing to determine whether a petitioner is entitled to relief, and the evidence a court may consider at that hearing (§ 1170.95, subds. (b)–(d); Stats. 2021, ch. 551, §§ 1, subds. (b)–(d), 2)." (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. omitted.) Senate Bill No. 775 also "expanded the scope of [the changes made by Senate Bill 1437] to encompass, among other things, murder convictions 'under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime.' " (*People v. Langi* (2022) 73 Cal.App.5th 972, 978 (*Langi*), italics removed.)

Upon receipt of a properly pleaded petition for resentencing under section 1172.6, the trial court must appoint counsel and permit briefing by the parties. (*Lewis, supra*, 11 Cal.5th at pp. 960–970.) The court must then determine whether the petitioner has made the prima facie showing. (§ 1172.6, subd. (c).) At this stage of the proceedings, the court may not engage in factfinding about the petitioner's culpability, but may deny a petition if the petitioner is ineligible for relief as a matter of law. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980–981 (*Drayton*), abrogated on other grounds by *Lewis, supra*, 11 Cal.5th at pp. 962–963.) To make this finding, the court may consider the petitioner's record of conviction, which includes the jury instructions and verdict forms. (*Lewis*, at pp. 970–972; *People v. Harden* (2022) 81 Cal.App.5th 45, 47, 50.)

" '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner[,]" ' " thereby deeming him or her ineligible. (*Lewis, supra*, 11 Cal.5th at p. 971, quoting *Drayton, supra*, 47 Cal.App.5th at p. 979.) An appellate opinion is generally

10

part of the record of conviction, and may be considered at the prima facie stage, provided that the court does not engage in factfinding based on the prior opinion. (*Lewis*, at p. 972.) "[A]lthough an appellate opinion affirming a conviction may be considered in determining whether a prima facie showing has been made under section [1172.6], on prima facie review such an opinion may not be conclusive." (*Langi, supra*, 73 Cal.App.5th at p. 979.)

A petitioner is ineligible for relief as a matter of law if the record of conviction shows that he or she was not convicted under any theory of liability affected by Senate Bill Nos. 1437's and 775's amendments to the law of murder. (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 866–867 (*Mancilla*).) For example, if the jury instructions relating to the challenged conviction do not include any theory of liability affected by Senate Bill 1437, then the petition must be denied without issuance of an order to show cause. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677.) Similarly, if the record of conviction shows that a petitioner's murder conviction is necessarily based on a theory of liability that remains valid under Senate Bill 1437—such as actual malice or requirements that comport with the amended law of felony murder—then the petition also must be denied. (See, e.g., *People v. Estrada* (2022) 77 Cal.App.5th 941, 945–949 [conviction based on direct aiding-and-abetting malice murder is ineligible for section 1172.6 relief]; *Mancilla, supra*, 67 Cal.App.5th at pp. 866–867 [conviction based on actual malice under provocative act theory is ineligible]; *People v. Medrano* (2021) 68 Cal.App.5th 177, 182–183 [conviction based on intent to kill is ineligible]; *People v. Farfan* (2021) 71 Cal.App.5th 942, 956–957 [conviction based on the same elements of liability as the amended law of felony murder is ineligible].)

If the prima facie showing is satisfied—that is, if the court determines that resentencing is not precluded as a matter of law in light of the record of

conviction—then the superior court must issue an order to show cause why relief should not be granted. At that point, the parties may either stipulate to resentencing or proceed to an evidentiary hearing. (§ 1172.6, subd. (d).) If the parties do not stipulate, the superior court must hold an evidentiary hearing at which the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under the amended law. (§ 1172.6, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

## II

### *Analysis*

Vasquez asserts that the trial court erred by making factual findings based on this court's earlier opinion affirming his conviction. Vasquez further contends the earlier opinion does not establish his ineligibility for relief because the jury found the personal firearm use allegation not true and Gonzalez was also alleged to have participated in the killing. In response, the Attorney General concedes that the trial court erred by relying on this court's opinion affirming his conviction. However, he asserts the error is harmless because the jury was not instructed on an invalid theory of murder liability. In support of this argument, the Attorney General asks this court to take judicial notice of the record of conviction that was before this court when it issued the opinion affirming the conviction (but which was not before the trial court in its consideration of Vasquez's resentencing petition).

In response to the Attorney General's arguments, Vasquez argues in reply that the record of conviction does not establish ineligibility for relief as a matter of law for two reasons. First, he argues that the jury instructions

12

alone do not establish ineligibility because the prosecutor's discussion of aiding and abetting liability during her closing argument, as related to the aiding and abetting jury instructions (CALJIC Nos. 3.00 and 3.01), might have allowed the jury to conclude Vasquez was an aider and abettor of the killing without finding he intended to kill. Second, he again argues the jury's not true finding on the firearm use allegation shows that the jury concluded Vasquez was not the shooter.[4]

As an initial matter, we grant the Attorney General's request that we take judicial notice of the records in the underlying appellate case, D034930. These records are properly judicially noticed. (See *People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1100, fn. 2 [taking judicial notice of records in prior criminal appeal]; Evid. Code, §§ 452, subd. (d) and 459, subd. (a).) In addition, we accept the People's concession that the trial court erred by making factual findings relying solely on this court's prior opinion. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 988 ["the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing"].) However, we reject Vasquez's assertion that the record of conviction does not show he is ineligible for relief under section 1172.6 as a matter of law. Rather, the

---

[4] In his briefing, Vasquez does not provide a citation to the underlying record of conviction to support his assertion that the jury found the personal use of a firearm allegation not true. As previously discussed, at the hearing on the petition, both the court and defense counsel asserted the personal firearm use enhancement allegation was dismissed during trial. In addition, the record before this court does not contain a verdict for the allegation, although it is contained in the charging information. Thus, the record of conviction contains no support for Vasquez's assertion that the jury found the allegation not true and we reject his argument based on this factual inaccuracy.

record conclusively establishes Vasquez's ineligibility and, therefore, the trial court's improper factfinding was harmless error.

Critically, at trial, the jury was not instructed on the natural and probable consequences doctrine, felony murder, or on any other theory of liability that would have allowed the jury to impute malice to Vasquez. The jury was instructed that murder requires malice aforethought; that first degree murder requires premeditation; and that, if the jury could not unanimously find premeditation beyond a reasonable doubt, they could not convict Vasquez of first degree murder. Further, the jury was correctly instructed on aiding and abetting liability with CALJIC Nos. 3.00 and 3.01, which required the jury to find such liability only if they concluded Vasquez personally harbored the requisite intent to kill. The jury was told that, to convict Vasquez as an aider and abettor, it had to find that he knew of the direct perpetrator's unlawful purpose, and that he, with the intent to commit, encourage, or facilitate the commission of the crime, aided, abetted, promoted, or instigated that crime.[5]

The jury convicted Vasquez of first degree murder. Therefore, under these instructions, the jury necessarily found Vasquez personally harbored

---

[5]     As read to the jury, CALJIC No. 3.00 stated: "Persons who are involved in [committing] [or] [attempting to commit] a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include: [¶] 1. Those who directly and actively [commit] [or] [attempt to commit] the act constituting the crime, or [¶] 2. Those who aid and abet the [commission] [or] [attempted commission] of the crime." CALJIC No. 3.01 stated: "A person aids and abets the [commission] [or] [attempted commission] of a crime when he [¶] 1. With knowledge of the unlawful purpose of the perpetrator and [¶] 2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] 3. By act or advice aids, promotes, encourages or instigates the commission of the crime."

premeditation in committing murder, either as the direct perpetrator or as a direct aider and abettor. Because of this, Vasquez is ineligible for relief as a matter of law, and the trial court's denial of his section 1172.6 petition was proper. (See, e.g., *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [defendant ineligible for relief where the jury was not instructed on felony murder or the natural and probable consequences doctrine, and therefore was not convicted on any theory involving the imputation of malice].)

As stated, Vasquez argues that this conclusion is drawn into question because of statements made by the prosecutor in her closing argument. Specifically, when explaining aiding or abetting liability, the prosecutor stated that "one who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime by a principal which *is a natural and probable consequence* of the crime originally aided and abetted." (Italics added.) In addition, the prosecutor explained that "a person who drives aids and abets and is therefore guilty as a principal if he has knowledge of the unlawful purpose the perpetrator has the intent to commit, encourage or facilitate the crime by act or advice, aids, promotes encourages or instigates the commission of the crime." Vasquez asserts this explanation was faulty because mere knowledge of the principal's intent to commit the crime is insufficient.

We reject Vasquez's argument that the prosecutor's statements created the possibility he was convicted without the jury finding he harbored an intent to kill. As an initial matter, the only crime at issue was the murder of Jose V. There was no other crime that Vasquez or his accomplice was alleged to have committed the natural and probable consequence of which was death. Further, despite the prosecutor's arguably confusing statements, because the jury was never instructed on the natural and probable consequences doctrine,

15

it had no basis to convict Vasquez on this theory. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis"]; see also *People v. Soto* (2020) 51 Cal.App.5th 1043, 1058–1059 [no prima facie showing where jury was never instructed on any target crime upon which a natural-and-probable consequence murder conviction could have been based].) In addition, the jury was instructed to "accept and follow" the court's instructions and ignore any contrary arguments of counsel.

Under the court's instructions, to find Vasquez guilty of first degree murder, the jury was required to find—and did find—he personally intended to kill the victim. Thus, the record of conviction shows Vasquez is ineligible for relief as a matter of law. Accordingly, the trial court's improper factfinding based on our prior opinion was harmless error.

DISPOSITION

The order is affirmed.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


DATO, J.

16