Filed 11/14/23

**CERTIFIED FOR PARTIAL PUBLICATION\***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY SALVADOR GOMEZ,<br><br>    Defendant and Appellant. | A164374<br><br>(Contra Costa County<br>Super. Ct. No. 4-200334-1) |


Anthony Salvador Gomez (appellant) appeals from the trial court's restitution order following his guilty plea to two counts of lewd acts upon a child under the age of 14 (Pen. Code, § 288, subd. (a)).[1]  Among other challenges, he contends the restitution order was an abuse of discretion.  We agree and reverse.

### BACKGROUND

At the preliminary hearing, a police officer testified he had observed a forensic interview with a 14-year-old minor (John Doe).  Doe told police that when Doe was six years old, appellant, his father, "sucked [Doe's] penis" and

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.

[1] All undesignated section references are to the Penal Code.

1

"then his father had him suck his penis" while appellant's hands were "on the back of [Doe's] head." The testifying officer observed Doe call appellant and recount the incident. After a long pause, appellant apologized and said he wanted to kill himself. Doe told police he remembered multiple incidents of inappropriate touching between the ages of five and ten. Doe said he had recently watched a TV show that made him realize these acts were wrong. The testifying officer did not describe Doe's demeanor during the interview or pretext call, or any emotional reaction from Doe. No other witnesses testified at the preliminary hearing.

The skeletal probation report did not include any information about Doe. At the sentencing hearing, the following victim impact statement from Doe was read by the prosecutor: "I am many things, but a victim I am not. I am a survivor. Realizing this was a spontaneous reaction to my realization that my father was not the leading, loving, supportive father that I deserved, but the piece of shit that he is today. As you all see him sitting in court today realize that he will not feel devastated to be sentenced to prison. He landed in the best place possible. He will be fed daily, given vaccines, sleep peacefully and be surrounded by many other pedophiles like himself. [¶] Know that while you're in prison I will continue to strive in my life reaching my goals faster than ever as all you ever were to me was a setback."

No additional evidence was presented in advance of or at the restitution hearing. Instead, the People argued noneconomic damages could be inferred from the nature of the crime; discussed child molestation cases awarding $50,000 and $100,000 per year of abuse; and requested a total of $100,000, or $50,000 per count. Appellant argued there was insufficient evidence to support the requested award.

The trial court stated, "The Court . . . has unfortunately experience

2

with many, many cases just like this or very much like this. And common sense and experience and life tells you what kind of horrific damage is done by these types of acts. These tears in the fabric of our society that are caused by these crimes spread horrific ripples through generations of families. People's lives are disturbed for many years to come, perhaps for the rest of their lives. And those disturbances affect the people they come in contact with, their relationships coming forward. And so the lawmakers have decided that there are other means by which we could address that type of damage and at least give some sort of relief to the victims of this horrific tear in the fabric of our society. It is not a mystery that this occurs. It is well-known, even to lay people, that these types of crimes cause this kind of damage. [¶] The People's request is not unreasonable the way they ask me to address it. It appears to be convictions for two crimes. There are multiple offenses. Even though it has—I think that the victim is older now than he was, but he was very young when these things occurred. I can only imagine the torment he has gone through for the last ten years and what he's going to go through for the rest of his life." The court ordered restitution of $50,000 for each count, for a total of $100,000.

## DISCUSSION

"Pursuant to the California Constitution, victims of crime have a right to restitution from criminal defendants: 'Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss.' (Cal. Const., art. I, § 28, subd. (b)(13)(B).) To effect this constitutional requirement, the Legislature enacted section 1202.4, which requires the trial court to order a defendant to pay victim restitution 'in an amount established by court order, based on the amount of loss claimed by the victim . . . or any other showing to the court.'

3

(§ 1202.4, subd. (f).)" (*People v. Lehman* (2016) 247 Cal.App.4th 795, 800 (*Lehman*).)

"With one exception, restitution orders are limited to the victim's economic damages." (*People v. Smith* (2011) 198 Cal.App.4th 415, 431 (*Smith*).) The exception is restitution may be ordered for "[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7." (§ 1202.4, subd. (f)(3)(F).) "Noneconomic damages are 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' (Civ. Code, § 1431.2, subd. (b)(2).)" (*Smith,* at p. 431.)

I.     *Constitutional Challenges*

Appellant first argues the restitution order violated his constitutional right to a jury trial and equal protection. We reject the challenges.[2]

Appellant acknowledges the ample authority that a defendant is not entitled to a jury trial on victim restitution. (E.g., *People v. Foalima* (2015) 239 Cal.App.4th 1376, 1398 ["neither *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466] nor *Southern Union* [*Co. v. U.S.* (2012) 567 U.S. 343] applies to direct victim restitution because direct victim restitution is not a criminal penalty"].) Appellant argues these cases are distinguishable because victim restitution for *noneconomic* losses is different. The same contention was rejected in *Smith, supra,* 198 Cal.App.4th at page 433, which reasoned, "there is no basis for distinguishing jury trial rights, or lack thereof, for restitution orders for economic damages and restitution orders for

---

[2] We therefore need not decide whether appellant forfeited them, as the People contend.

4

noneconomic damages. In both cases, the trial court is performing a task that, in a civil case, a jury would perform." We agree with *Smith.*

*Smith* also rejected the equal protection argument, advanced by appellant here, that there is no rational reason to authorize noneconomic restitution only for certain child molestation crimes. *Smith* reasoned, "Differentiating between child victims and other victims is rational based on the vulnerability of children in general and society's interest in protecting children." (*Smith, supra,* 198 Cal.App.4th at p. 435.) We again agree with *Smith.* Even assuming, as appellant argues, there are some cases in which a defendant convicted of a sexual offense against a child is not subject to noneconomic restitution, our conclusion is unchanged. "When conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends.'" (*People v. Turnage* (2012) 55 Cal.4th 62, 77.)[3]

II.    *Abuse of Discretion*

"'A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. [Citation.] No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered.'" (*Lehman, supra,* 247 Cal.App.4th at p. 801.) "The court 'must demonstrate a rational basis for its award, and ensure that the record is sufficient to permit meaningful review. The burden is on the

---

[3] Although appellant's opening brief elsewhere discusses *Smith*, it fails to acknowledge *Smith*'s rejection of the jury trial and equal protection arguments. (See Rules Prof. Conduct, rule 3.3(a)(2) [lawyer shall not "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client" (asterisks omitted)].)

party seeking restitution to provide an adequate factual basis for the claim.' " (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1182 (*Valenti*).) Appellant argues the restitution order is not supported by an adequate factual basis because there is no evidence of the impact of appellant's crimes on Doe. We agree.[4]

The parties discuss three published cases reviewing noneconomic restitution orders. In *Smith, supra,* 198 Cal.App.4th 415, evidence at trial established the defendant molested his stepdaughter for years. (*Id.* at pp. 420–421.) "The evidence presented at the restitution hearing established that defendant not only molested Doe, as established by defendant's convictions, but also isolated her and took advantage of a position of trust from the time she was eight years old until she left the home as an adult. She was still having nightmares and flashbacks concerning the abuse. And she had been in therapy to deal with the problems caused by the abuse. She was having difficulty keeping jobs, and, at age 30 at the time of the hearing, had not finished her education, still attending Folsom Lake College. She twice attempted suicide by overdosing on ibuprofen." (*Id.* at p. 432.) The Court of Appeal held an award of $750,000—$50,000 per year for 15 years of molestation—was not an abuse of discretion. (*Id.* at pp. 433, 436–437.)

In *Lehman, supra,* 247 Cal.App.4th 795, evidence at trial established the defendant molested Jane Doe 1 from the time she was in grade school

---

[4] *Smith* and *Lehman* also applied the standard of review from the civil damages context that " 'An appellate court can interfere on the ground that the judgment is excessive only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury.' " (*Smith, supra,* 198 Cal.App.4th at p. 436; accord, *Lehman, supra,* 247 Cal.App.4th at p. 801.) Because appellant's challenge is not that the award is excessive, but rather that it lacks an adequate factual basis, this standard is not applicable.

until the end of high school, and rubbed Jane Doe 2's back underneath her clothes multiple times despite her asking him to stop. (*Id.* at pp. 797–798.) The trial court awarded noneconomic victim restitution of $900,000 to Jane Doe 1, explaining, " 'In her testimony at trial and her statements at sentencing, Jane Doe 1 described the emotional pain she suffered at the hands of the Defendant and its impact on her life through the present. The pain she endured in reliving these events was palpable.' " (*Id.* at pp. 800, 802.) The court awarded $100,000 for Jane Doe 2, explaining, " 'In her testimony, Jane Doe [2] was visibly distraught. She attributed her emotional breakdown to the fact that the Defendant had abused her sister in the same way and that she had to discuss the harm her family had suffered as a result of the Defendant's conduct.' " (*Id.* at pp. 800, 803.) The Court of Appeal found no abuse of discretion: "We agree that more evidence could have been provided concerning the victims' noneconomic losses. Nevertheless, we cannot conclude the trial court abused its discretion or that the noneconomic restitution awarded in this case shocks the conscience. . . . Here, the trial court's restitution award was evidently based on Jane Doe 1's and Jane Doe 2's testimony at trial, Jane Doe 1's statements at the sentencing hearing, and a probation report. This evidence constituted sufficient support for the restitution award, and there is no indication the trial court considered restitution awards from other cases in reaching its decision." (*Id.* at pp. 803–804.)

In *Valenti, supra,* 243 Cal.App.4th 1140, evidence at trial established the defendant committed felony continuous sexual abuse or felony lewd acts against eight children.[5] (*Id.* at pp. 1149–1150.) For the victims of continuous

_____

[5] An additional conviction for lewd acts was reversed on appeal. (*Valenti, supra,* 243 Cal.App.4th at pp. 1173–1174.) The defendant was also

sexual abuse, the abuse included oral copulation and sodomy. (*Id.* at pp. 1150, 1152–1153.) For the victims of lewd acts, the abuse involved cuddling, inappropriately long hugs, and having the victims sit on the defendant's lap. (*Id.* at pp. 1150, 1153–1154.) The trial court awarded $50,000 in victim restitution to each of these victims, without explanation. (*Id.* at pp. 1180–1181.) With respect to the restitution awards to the victims of lewd acts,[6] "The record contains no victim declarations, independent documentation, or professional evaluations. The only current information about [the lewd acts victims] was filtered through their parents and conveyed in the probation report or in a statement at sentencing," and the parents reported their belief that these children " 'did not sustain actual child abuse' " and were " 'doing fine' " or " 'excellent.' " (*Id.* at pp. 1182–1182, 1183.) The Court of Appeal reversed the restitution awards to these victims: "[T]he court in this case did not find facts, cite reliable evidence, or even explain how it arrived at the amount of restitution awarded to each victim. There was no evidence, either through direct testimony or victim-impact statements, that the children suffered nightmares or flashbacks, that they were having trouble in school or problems making friends, that they had considered harming themselves or others, or that they had sought or received counseling in any form. In fact, all three families were relieved that their sons had not

convicted of misdemeanor offenses against other victims. (*Id.* at pp. 1150–1151.)

[6] The court reversed the awards to the victims of continuous sexual abuse on the ground that the restitution statute at the time did not authorize noneconomic restitution to such victims. (*Valenti*, *supra*, 243 Cal.App.4th at pp. 1181–1182; but see *People v. Martinez* (2017) 8 Cal.App.5th 298, 300 (*Martinez*).) The statute was subsequently amended. (Stats. 2017, ch. 101, § 1.)

8

'actually' been abused.  Because the court did not 'demonstrate a rational basis for its award' or 'ensure that the record is sufficient to permit meaningful review,' we reverse the awards . . . ." (*Id.* at pp. 1183–1184.)

We agree with appellant that this case is more akin to *Valenti* than to *Smith* or *Lehman.*  To be sure, appellant's crimes are far more egregious than the lewd acts in *Valenti.*  But the record reveals *no* evidence of the impact of the crimes on Doe.  Doe did not testify at the preliminary hearing, sentencing, or restitution hearing; nor did his mother or any other person with knowledge of the impact of appellant's crimes.  The brief statement read by the prosecutor at sentencing primarily expressed Doe's anger at appellant, and the lone statement of impact—that appellant "was a setback" for Doe—had no elaboration or even connection to the underlying crimes.  This bare record is reflected in the trial court's explanation for its restitution award, which relies entirely on the court's experience with similar cases and its "common sense" understanding of the impact of "these types of acts."

We do not dispute, as the People contend, that the nature of egregious crimes such as appellant's renders it very likely that the victim will be harmed.  (See *Martinez, supra,* 8 Cal.App.5th at p. 305 [" 'It is well recognized that " 'child sexual abuse results in long-term emotional and psychological damage to the child victim if left untreated.' " [Citation.]  And such abuse "is not the kind of act that results in emotional and psychological harm only occasionally." ' "].)  Nonetheless, some evidence of the harm incurred by the *particular victim* of the crime is required to support a victim restitution award.  "[A] crime victim may recover only for losses *personally incurred by that victim.*" (*People v. Runyan* (2012) 54 Cal.4th 849, 859–860; see also Cal. Const., art. I, § 28, subd. (b)(13)(A) ["all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from

9

the persons convicted of the crimes causing *the losses they suffer*" (italics added)].)  In other words, it is insufficient that the *average victim* would suffer injury from a particular type of crime, or that *generally* victims of such crimes suffer injury.

We see no reason why this fundamental principle of victim restitution should not apply to noneconomic restitution.  The distinguishing feature of noneconomic restitution is that such injuries are very difficult to quantify. " ' "One of the most difficult tasks imposed upon a jury in deciding a case involving personal injuries is to determine the amount of money the plaintiff is to be awarded as compensation for pain and suffering. . . . In a very real sense, the jury is asked to evaluate in terms of money a determent for which monetary compensation cannot be ascertained with any demonstrable accuracy." ' " (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 300.) Thus, in considering a challenge to the amount of noneconomic restitution awarded, *Smith* reasoned, "By their nature, economic damages are quantifiable and thus awards of economic damages are readily reviewed for whether they are 'rationally designed to determine the . . . victim's economic loss.' [Citation.]  Noneconomic damages, however, require more subjective considerations.  Thus, the different standard is justified." (*Smith, supra,* 198 Cal.App.4th at p. 436.)  But the intrinsic difficulty in *quantifying* noneconomic injury does not impact the fundamental principle that restitution be awarded for injury *incurred by the victim*.[7]

---

[7] This conclusion is not inconsistent with authority in the civil damages context providing that, "even in the absence of any explicit evidence showing pain, the jury may infer such pain, if the injury is such that the jury in its common experience knows it is normally accompanied by pain." (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 896.)  Courts have relied on this proposition to refute arguments that expert testimony or direct testimony of pain and suffering is required, not to hold a plaintiff need not

In sum, because there is *no* evidence of the impact of appellant's crimes on John Doe, and the trial court relied exclusively on its experience and common sense regarding similar incidents in awarding restitution, the trial court's restitution award was an abuse of discretion. We emphasize that the evidentiary bar is a low one, as demonstrated in the cases discussed above. Notably, our conclusion does not necessarily obligate the victim to present testimony or a statement about the impact, something prosecutors and trial courts may be reluctant to require, particularly when the victim is still a minor. The trial court's observation of the victim's trial testimony may be sufficient, as may testimony about or a video of the victim's statements to investigators. Statements and testimony may be presented to the court or probation officer by the victim's parents, a treating physician or therapist, or others with personal knowledge of the impact on the victim. This list is not

---

present *any* evidence of the impact of the defendant's acts. (E.g., *Capelouto*, at p. 896 [jury could infer pain and suffering from evidence that the infant, who was negligently infected with salmonella, "experienced severe diarrhea and vomiting of a projectile nature, that she suffered shock and dehydration, and that she became listless and lethargic during these attacks" despite the absence of expert medical evidence and the infant's inability to testify]; *Mendoza v. Rudolf* (1956) 140 Cal.App.2d 633, 636–637 [trial testimony of plaintiffs that one "was still suffering from a loss of memory; that he had shooting pains in his back; that he was unable to hold any position because his kidney bothered him and that he had dizzy spells," and the other "was suffering from headaches and dizzy spells and was having trouble with his vision," was sufficient to support an award for future pain and suffering despite absence of "medical testimony"]; *Hilliard v. A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 388, 413 [evidence that defective medical device caused the plaintiff to have seven "major abdominal surgeries to correct adhesions between her vagina and rectum, to repair a rectovaginal fistula and to remove the remaining portion of her right ovary," was "substantial evidence permitting the jury to infer pain even if she had not testified to her pain. Her calamitous experiences to the date of the trial were such that the jury could infer great mental anguish, pain, and suffering"].)

exhaustive, but is illustrative of the wide range of evidence a trial court may rely on. "[S]ection 1202.4 does not require any particular kind of proof to establish the victim's losses." (*Lehman, supra,* 247 Cal.App.4th at p. 803.) However, there must be *some* evidence of the impact of the crime on the particular victim. Because no such evidence is in the record here, we reverse and remand for further restitution proceedings.

## DISPOSITION

The order is reversed and the matter is remanded for further restitution proceedings to determine a noneconomic restitution award, if any.


SIMONS, J.


WE CONCUR:

JACKSON, P. J.
CHOU, J.


*People v. Gomez* (A164374)

12

## *People v. Gomez* (A164374)

Trial Court:      Contra Costa County

Trial Judge:      Hon. John Cope

Attorneys:

Meredith Fahn, under appointment by the Court of Appeal, by First District's Appellate Project's Independent Case System for Defendant and Appellant.

Rob Bonta, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Katie L. Stowe, Deputy Attorney General for Plaintiff and Respondent.